John H. Patton, California SBN 069261
Matthew K. Wisinski, California SBN 195535
SHAPIRO BUCHMAN PROVINE & PATTON LLP
1333 North California Boulevard, Suite 350
Walnut Creek, CA 94596
Telephone: (925) 944-9700
Facsimile: (925) 944-9701
E-mail: jpatton@sbllp.com
Attorneys for Plaintiff CRV Enterprises, Inc.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **CRV ENTERPRISES, INC.**, a **California corporation,**<br><br>Plaintiff,<br><br>vs.<br><br>**THE UNITED STATES OF AMERICA,**<br><br>Defendant. | No. 06-660L<br><br>**NOTICE OF MOTION AND PLAINTIFF CRV ENTERPRISES, INC.'S MOTION FOR ORDER GRANTING LEAVE TO FILE FIRST AMENDED COMPLAINT [RCFC 15]**<br><br>Judge George W. Miller |

**MOTION FOR ORDER GRANTING LEAVE TO FILE FIRST AMENDED COMPLAINT**

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** pursuant to Rule 15 of the Rules of the United States Court of Claims (RCFC), plaintiff CRV Enterprises, Inc., for itself and on behalf of C. Ryan Voorhees, hereby respectfully moves the Court for entry of an Order granting plaintiff CRV Enterprises, Inc. and C. Ryan Voorhees leave to file the First Amended Complaint in the form attached hereto, adding C. Ryan Voorhees as a party plaintiff.

Said motion is made and based upon the following grounds:

1. This action consists of a claim for money damages as compensation against the defendant United States of America (USA) arising out of the defendant's uncompensated taking of and injury to real property owned by plaintiffs CRV and C. Ryan Voorhees (1404 West Weber Avenue, Stockton, CA.), as authorized by the Tucker Act, 28 U.S.C. § 1491. Plaintiff CRV had previously commenced an action against the defendant USA arising out of the matters alleged in this case on April 30, 2003 (Case No. 1:03-cv-00867-GWM), at a time when Defendant USA was planning but had not yet physically installed the improvements that are subjects of this action, but the respective parties agreed to dismiss such action without prejudice because it was not yet ripe, and such stipulation was entered by this Court on May 16, 2005.

2. On or about October 11, 2004, and for reasons having nothing to do with the claims asserted in this action, plaintiff CRV conveyed the property which is the subject of this action, 1404 West Weber Avenue, Stockton, CA. ("the Stockton Property") to its owner and principal, C. Ryan Voorhees, an individual. This conveyance was memorialized by deed recorded October 20, 2004. Through inadvertence, counsel for CRV (John H. Patton) was not aware of this conveyance.

3. On or about July of 2006, Defendant USA installed the physical improvements that are the subject of the takings claim in this action, resulting in the taking of the Stockton Property that is the subject of this action. On September 20. 2006, and unaware of the transfer set forth in Paragraph 2 above, counsel for CRV (John H. Patton) filed the above-entitled action, with CRV named as the only party plaintiff in the Complaint.

4. The deposition of C. Ryan Voorhees, individually, and appearing on behalf of CRV pursuant to RCFC Rule 30(b)(6), was commenced on November 19, 2007. During the course of that deposition, questions were propounded to Mr. Voorhees concerning ownership of the Stockton Property. As a result of such questioning, further investigation was made shortly thereafter as to the ownership of such property. At that time, counsel for CRV (John H. Patton) first learned of the transfer described above in Paragraph 2. As such, it appears that C. Ryan Voorhees was and is a proper party plaintiff in this action, as owner of the Stockton Property at the time of the alleged taking in this action.

5. Shortly after learning of the transfer, on December 20, 2007, counsel for Plaintiff CRV (John H. Patton) orally advised counsel for Defendant USA (William R. Shapiro) about learning of the transfer, and requested a stipulation permitting leave to file an amended pleading adding C. Ryan Voorhees as a plaintiff herein. This conversation was followed-up with a letter confirming same on December 20, 2007.

6. On December 27, 2007, counsel for Plaintiff CRV (John H. Patton) forwarded a written stipulation permitting leave to file the proposed First Amended Complaint to counsel for Defendant USA (William R. Shapiro).

7. On or about December 28, 2007, counsel for Plaintiff CRV (John H. Patton) and counsel for Defendant USA (William R. Shapiro) met and conferred by telephone to discuss the request for stipulation, and counsel for Defendant USA represented that Defendant USA probably would not stipulate to amendment of the

pleadings, but probably would not oppose the request for leave to amend pursuant to motion.

8. On December 28, 2007, counsel for Plaintiff CRV (John H. Patton) electronically transmitted a copy of the proposed First Amended Complaint to counsel for Defendant USA (William R. Shapiro).

9. On January 7, 2008, counsel for Defendant USA (William R. Shapiro) electronically transmitted a letter to counsel for Plaintiff CRV (John H. Patton) confirming that Defendant USA would not stipulate to amendment of the pleadings, but does not oppose the request for leave to file the proposed First Amended Complaint (attached), pursuant to motion.

10. Leave to amend permitting the addition of C. Ryan Voorhees as a party plaintiff herein is consistent with the interests of justice, in that Mr. Voorhees was and is owner of an interest in the Stockton Property which is the subject of the taking alleged in the above-entitled action, and was such an owner at the time of the alleged taking, and it therefore appears that amendment to add such a proper party is in the interests of judicial economy adjudicating all proper parties' rights with regard to the matters that are the subject of this action.

This motion is made and based on this Notice of Motion, on the proposed First Amended Complaint attached hereto, on the Declaration of John H. Patton and Memorandum of Points and Authorities served and filed herewith, and on the pleadings, papers and records on file in the above-entitled action. A copy of the requested Order is attached hereto.

Dated: January 15, 2008

Respectfully Submitted,

SHAPIRO BUCHMAN PROVINE & PATTON LLP

By: ______________________________

John H. Patton
Attorneys for Plaintiffs CRV Enterprises, Inc. and
C. Ryan Voorhees

206300.1

# [PROPOSED] FIRST AMENDED COMPLAINT FOR RECOVERY OF JUST COMPENSATION (MONEY DAMAGES) FOR INVERSE CONDEMNATION

John H. Patton, California SBN 069261
Matthew K. Wisinski, California SBN 195535
SHAPIRO BUCHMAN PROVINE & PATTON LLP
1333 North California Boulevard, Suite 350
Walnut Creek, CA 94596
Telephone: (925) 944-9700
Facsimile: (925) 944-9701
E-mail: jpatton@sbllp.com
Attorneys for Plaintiff CRV Enterprises, Inc.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **CRV ENTERPRISES, INC., a California Corporation, C. Ryan Voorhees, an individual,**<br><br>Plaintiffs,<br><br>v.<br><br>**THE UNITED STATES OF AMERICA,**<br><br>Defendant. | Case No. 06-660L<br>Judge George W. Miller |

**FIRST AMENDED COMPLAINT FOR RECOVERY OF JUST COMPENSATION (MONEY DAMAGES) FOR INVERSE CONDEMNATION**

Plaintiffs CRV Enterprises, Inc. (CRV), and C. Ryan Voorhees allege as follows, as and for their First Amended Complaint herein:

## GENERAL ALLEGATIONS

Summary of the Action.

1. This is an action in inverse condemnation to recover just compensation based on the Fifth Amendment of the United States Constitution, pursuant to 42

U.S.C. § 1983. This action consists of a claim for money damages as compensation against the defendant United States of America (USA) arising out of the defendant's uncompensated taking of and injury to real property owned by plaintiffs CRV and C. Ryan Voorhees, as authorized by the Tucker Act, 28 U.S.C. § 1491. There are no other pending actions or claims governing plaintiffs' rights and obligations arising out of the matters alleged in this Complaint, pursuant to 28 U.S.C. § 1500. Plaintiff CRV had previously commenced an action against the defendant USA arising out of the matters alleged herein on April 30, 2003 (Case No. 1:03-cv-00867-GWM), at a time when Defendant USA was planning but had not physically installed the improvements that are subjects of this action, but the respective parties agreed to dismiss such action without prejudice because it was not yet ripe, and such stipulation was entered by this Court on May 16, 2005.

The Parties.

2. At all times herein mentioned, plaintiff CRV Enterprises, Inc. ("CRV") was and is a corporation duly organized, existing, and in good standing pursuant to the laws of the State of California, with its principal place of business located within the City of Galt, County of Sacramento, State of California.

3. At all times herein mentioned, plaintiff C. Ryan Voorhees was and is an individual, residing the City of Galt, County of Sacramento, State of California, and the principal officer, director, and manager of plaintiff CRV. The initials of plaintiff CRV are those of plaintiff C. Ryan Voorhees.

4. At all times herein mentioned, the defendant USA has acted through its duly authorized agency, the United States Environmental Protection Agency ("EPA").

The EPA was established in 1970 by Executive Act of the President of the USA, as an autonomous regulatory body intended to oversee the enforcement of environmental policy, as promulgated under the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. §§ 4321-4347. For purposes of the allegations of this Complaint, the EPA is sometimes referred to as the "USA" and/or "Defendant."

5. As it concerns the claims of plaintiffs herein, the actions of the defendant USA, through the EPA, were duly authorized and conducted pursuant to the authority granted under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA), as amended by the Superfund Amendments and Reauthorization Act of 1986 (SARA), 42 U.S.C. §§ 9601, *et seq.*

Jurisdiction and Venue.

6. As alleged below, the amount of plaintiffs' claim against the defendant USA greatly exceeds $10,000, and jurisdiction and venue are therefore appropriate in the above-entitled Court pursuant to 28 U.S.C. §§ 1346(a)(2) and 1491.

The Maritime Center Property.

7. From approximately November 8, 2002, until on or about October 11, 2004, plaintiff CRV was the owner of all right, title and interest in approximately 9.54 acres of improved real property located in the City of Stockton, San Joaquin County, California, described as Assessor's Parcel No. 145-190-08, and bearing a street address of 1404 West Weber Avenue, Stockton, CA 95203, sometimes called the "E Port Center," and sometimes called the "Stockton Maritime Center" (hereinafter, the "Maritime Center"). Attached hereto, marked Exhibit A, and incorporated herein by reference, is a true and correct copy of the Assessor's Parcel Map depicting the

Maritime Center property (designated by the arrow labeled "SUBJECT"). On or about October 11, 2004, plaintiff CRV conveyed the Maritime Center property to plaintiff C. Ryan Voorhees, a married man, as his separate property, by Deed recorded on October 20, 2004. Plaintiffs also own an adjacent 10.57 acre parcel described as Assessor's Parcel No. 145-190-16, to the north of the Maritime Center property ("the adjacent property").

8. Plaintiffs originally acquired a written option and entered into a written purchase and sale agreement to purchase the Maritime Center property on August 25, 2000, and on or before October 1, 2001, delivered nonrefundable option consideration and deposits to the Seller of at least $200,000 toward acquisition of said property.

9. Plaintiffs acquired the Maritime Center property with the expectation and intent of developing same. In connection with and as a result of its acquisition of the above-alleged contract rights and obligations, and as part of its planned development effort for the Maritime Center, plaintiffs have invested well more than $300,000 in additional funds in development and pre-development holding costs for the subject property, and adjacent property.

10. On or about November 8, 2002, and pursuant to the above-alleged contract rights and obligations, and prior delivery of monetary consideration, and subsequent to and as a result of its investment of substantial funds in planning and studies, plaintiffs completed acquisition of all right, title, and interest in the Maritime Center property, at a purchase price of $1,315,000.

11. At all times relevant, the Maritime Center was and is situated at the western end of West Weber Avenue, one of the main arterial streets of the City of Stockton, California, which street leads directly east from said property into downtown Stockton, less than a mile away. The Maritime Center was and is also situated just to the southeast of, and near the Stockton Deep Water Channel, a navigable body of water providing access for vessels of all types from the San Francisco Bay and San Joaquin Delta to service, dock, load and unload, and to otherwise utilize the Port of Stockton.

12. At all times relevant, the Maritime Center was and is situated on a body of water known as the Mormon Channel or the Old Mormon Slough (hereinafter, "Mormon Channel," or "the Slough"), near its confluence with the Stockton Deep Water Channel. The Mormon Channel is a dead-end waterway approximately 2,500 feet long and 180 feet wide. Plaintiffs allege on information and belief that the northwestern end of the Mormon Channel was dredged to a depth of approximately sixteen (16) feet in around 1993, to facilitate barge access and the movement of vessels thereon, and that the majority of the remainder of the Channel is approximately ten (10) feet deep. The approximate location of the Mormon Channel is depicted on the Assessor's Parcel Map attached hereto as Exhibit A.

13. By means of the Stockton Deep Water Channel, and then the Mormon Channel, small and medium-sized vessels, barges, and other watercraft have historically, and still could, absent interference, readily access the entire southern and southwestern side of the Maritime Center property along the northern and northeastern edges of the Mormon Channel. Further, the Maritime Center property

has for years enjoyed existing improvements that enhance its maritime use and value, including a barge slip, sheet pile wall, and loading docks, all of which have been beneficially utilized in the enjoyment of this property, and said property had been used for such marine purposes for a number of years. Plaintiffs purchased the Maritime Center property with the intent of continuing to enjoy and capitalize on these maritime uses and maritime access and egress to such property, via the Mormon Channel.

14. Until recently, plaintiffs used the Maritime Center property in connection with barge storage, maintenance, shipping, docking, wood storage, and other maritime-related activities, however, plaintiffs acquired such property with the intent, plan, and expectation of developing and improving same for its highest and best use, as more particularly described below.

15. At all times relevant, the Maritime Center property was located near other active projects and developments within the developing Port Industrial Redevelopment Project Area ("the Project Area") for the City of Stockton. The Project Area was and is intended to upgrade the infrastructure of the Port of Stockton and surrounding areas, and to provide incentives for new commercial and industrial development and redevelopment in the area.

16. At all times relevant, plaintiffs acquired the Maritime Center property with the intent and expectation of developing same as part of a mixed use master plan development involving a marina with office, recreational, and retail commercial facilities, such as boat slips, dry boat storage facilities, marine sales and service facilities, restaurants, hotel/motel, and other planned and potential amenities,

consistent with the highest and best use of the property ("the development plan"), and which use is reasonable and feasible in all respects. As alleged above, plaintiffs have already invested well more than $300,000 in planning and development activities, as well as expenses incurred in holding the property, toward the development of the Maritime Center property for such use.

17. A critical element for the development of the Maritime Center property for its highest and best use, was and is marine access and egress and docking capability for vessels to and from the property, via the northern and northeastern edges of the Mormon Channel to and from the Stockton Deep Water Channel. At all times herein mentioned prior to the commencement of defendant's remediation project (as more particularly alleged below), such marine access and egress has existed, and has for years on end been utilized by the owners of the Maritime Center property, including plaintiffs, as well as by other property owners located along the Mormon Channel. Until the actions of the USA described herein occurred, plaintiffs realized substantial revenues and income from activities permitting and leasing the Maritime Center property for such uses.

18. Maritime access and egress and docking capability for vessels via the Mormon Channel is essential to plaintiffs' most economically viable use of the Maritime Center property, and is a critical feature to said property's highest and best use.

19. At all times herein mentioned prior to the completion of defendant's remediation project (as more particularly alleged below), the Maritime Center

property was and is readily reasonably developable for the uses contemplated by plaintiffs' development plan, as more particularly alleged above.

The McCormick & Baxter Superfund Site.

20. The former properties of the McCormick & Baxter Creosoting Company (collectively, "the M&B Site") are situated to the south and to the west of, and across the Mormon Channel from, the Maritime Center property. According to the EPA, from approximately 1946 through 1990, McCormick & Baxter operated a wood preserving facility at the M&B Site, in which creosote and oil-borne solution treatment products were used during wood treatment operations, and in which oily waste ponds were maintained for purposes of waste preservation. According to the EPA, these treatment products contained various contaminants, and as a result of the use of such products at the M&B Site, such contaminants migrated by various means, including stormwater runoff, chemical process spills, and the maintenance of oily waste ponds, into the ground at the property, and allegedly into areas on the southern and/or southwestern side of the Mormon Channel.

21. Plaintiffs allege on information and belief that the contaminants present at the M&B Site are confined to that site and perhaps to the southern side of the Mormon Channel immediately adjacent to the M&B Site, and are not substantially present at the Maritime Center property, or in the northern, and northwestern Mormon Channel areas that permit maritime access and egress to and from said property. At no time has the Maritime Center property required or been the subject of any environmental remediation investigations or measures, beyond monitoring, pursuant to the Comprehensive Environmental Response, Compensation and

Liability Act of 1980 (CERCLA), as amended by the Superfund Amendments and Reauthorization Act of 1986 (SARA), 42 U.S.C. §§ 9601, *et seq.*

Defendant's Remediation Project.

22. Plaintiffs allege on information and belief that as a result of the presence and migration of various contaminants at the M&B Site, the EPA began studying the M&B Site sometime during the 1990's. Plaintiffs allege on information and belief that since that time, the EPA has conducted or is conducting a series of investigations, as well as removal and stabilization actions at the M&B Site, including demolition and disposal of structures and equipment, excavation of contaminated soil and containment of same in a lined repository, installation of an asphalt cap over the lined repository, and the installation of a sheet piling wall along the southwestern shoreline of the Mormon Channel, all intended to control oily seepages from the former oily waste pond area.

23. On or about October 26, 2001, the defendant USA, through the EPA, notified the then-owner/seller of the Maritime Center property of its intention to install environmental remediation improvements on and adjacent to the Maritime Center property to address allegedly contaminated sediment in the Mormon Channel. According to the EPA, this sediment had been and was accumulating in areas of the Mormon Channel immediately adjacent to M&B Site waste ponds, central processing area, and eastern end of the Channel, as a result of the previous operations of McCormick & Baxter on the M&B Site, across the Channel from the Maritime Center Property. All of these areas are located on the southern and southwest sides of the Mormon Channel, opposite the Channel from the Maritime Center property.

According to the EPA, the mouth of the Mormon Channel was considered a "low-level threat area because contamination is not widespread there." However, the mouth of the Mormon Channel was and is vital and critical to plaintiff's productive use of the Maritime Center property, and to their intended use of such property.

24. On or about June 1, 2006, the USA commenced construction of certain remediation improvements on and adjacent to the Maritime Center, which construction was completed on or about September 30, 2006. Certain of the remediation improvements carried out by the defendant USA in the Mormon Channel are a permanent physical invasion, interfering with and substantially disrupting plaintiffs' property rights -- essentially the erection of government-owned physical construction improvements, as opposed to mere regulatory and/or legislative restrictions, and included the placement of a 2-foot thick sand cap covering approximately ¾ of the bottom of the Mormon Channel, reducing the depth of the channel, installation of a silt curtain across the mouth of the Mormon Channel, as well as the installation of a temporary sheet pile wall and ultimately, physical erection of a permanent log boom across the Mormon Channel, blocking and precluding any marine access to or egress from a substantial majority of the Maritime Center property, and dispossessing plaintiffs from such beneficial use and enjoyment.

25. According to the EPA, the placement of the permanent log boom across the mouth of the Mormon Channel was and is designed and intended to prevent marine traffic from moving into the slough and potentially disturbing the sand cap to be placed in the Channel by the EPA, although there is no evidence that

typical pleasure watercraft, boats and vessels would in any way disturb a cap that is well beneath the surface of the Channel. This permanent log boom was placed across the Channel in a location beginning on the northwest bank of the Maritime Center property, and spans the entire mouth of the Mormon Channel in a northwesterly direction until reaching the bank of the M&B site on the northwest side of the Channel. Defendant USA acknowledges that the placement of its permanent log boom across the Mormon Channel necessarily deprives the owners of the Maritime Center property of any marine access to the Channel area to the southeast of the log boom, thereby preventing any marine access to or egress from, nearly the entire Maritime Center property. A diagram depicting the approximate locations of defendant's improvements, as they impact the Maritime Center property, is attached hereto, marked Exhibit B, and incorporated herein by reference.

26. According to defendant, the overall goal and objective of the remedial action announced by the EPA is to protect human health and the environment from the risks presented by contaminated soil, groundwater and sediment, including, among numerous other considerations, minimizing the migration of contaminants from subsurface soils and from the migration of groundwater from the M&B site into the Mormon Channel. Defendant's remediation project is therefore at least ostensibly one that utilizes public improvements to achieve a public purpose, the proclaimed environmental remediation of the M&B Site, and, to a lesser extent, immediately adjacent property on the southern and southwest sides of the Mormon Channel. But defendant's remediation project does not purport to confer any significant environmental benefit to the Maritime Center property, and any

proclaimed environmental benefit claimed for areas necessary for maritime access to the Maritime Center property (such as the mouth of the slough and the northern areas of the Channel), if any there be, is far outweighed by the detriment caused by said remediation project, as constructed, which precludes virtually any maritime access and egress to the Maritime Center property. Indeed, even if there had been significant contamination of the Slough that some day in the distant future might be reduced by the EPA's project, the existence of such contamination, if any, has not and would not substantially interfere with plaintiffs' existing and planned use and enjoyment of the Maritime Center Property, and therefore the EPA's project confers no real benefit to plaintiffs' property, but rather a imposes a huge detriment on such property and its use. At all times, the defendant USA had the option of conferring equivalent or more effective environmental benefits upon the Mormon Channel without interfering with maritime uses and access, yet it has deliberately chosen to act in a manner which precludes such uses.

27. At no time relevant has Defendant ever acted or attempted to act so as to regulate navigation within the Mormon Channel as it impacts the Maritime Center property, or to in any way to improve the navigational characteristics of same. Defendant's remediation project was and is not intended to, does not purport to, and does not in any way improve or otherwise serve any navigational interest in the Mormon Channel, in the adjacent Stockton Deep Water Channel, or otherwise. Defendant's remediation project is therefore not one conducted in the exercise of any power or servitude to regulate commerce or navigation in navigable waters, but rather, entirely an exercise of the EPA's environmental administrative and remedial

powers granted pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA), as amended by the Superfund Amendments and Reauthorization Act of 1986 (SARA), 42 U.S.C. §§ 9601, *et seq.* As such, Defendant's actions constitute a physical taking of and interference with private property for public purposes, requiring the payment of just compensation.

28. In devising its remediation project, Defendant considered, but ultimately rejected, no action, as well as potential remediation measures which would have eliminated and/or minimized the project's interference with plaintiff CRV's use and enjoyment of and marine access to the Maritime Center property, while still accomplishing the EPA's stated objectives, including dredging of allegedly contaminated material from the Mormon Channel combined with other measures, such as off-site disposal, treatment, and capping after dredging. Some of these methods would have been far more effective in reducing the level of contamination in the area than the remedy chosen by Defendant, which essentially leaves the contaminants on site. Defendant specifically rejected protests from the seller and plaintiffs that its installation of a permanent log boom and other improvements across the mouth of the Mormon Channel interferes with the use and enjoyment of the Maritime Center property, deprives the great majority of such property of any marine access or egress, or docking capability, and greatly diminishes and/or destroys the economic value of such property, and defendant has refused to implement more reasonable and less intrusive measures that would permit continued marine access and egress to and from the Maritime Center property, insisting upon proceeding as determined to be in its own best interests, and contrary

to those of owners such as plaintiffs. In short, defendant elected to make a conscious decision and taking for its own purposes, when alternative reasonable measures were available that would have eliminated or minimized the taking and interference with private property, while still accomplishing the intended environmental result.

29. On or about October of 2002, Defendant first entered into possession of the M&B site and portions of the south and southwestern banks of the Mormon Channel, and commenced construction of its remediation project, including construction of a berm and grading and stabilization work along the southern and southwestern banks of the Mormon Channel preparatory to installation of a sand cap over the bottom of the Channel, and installation of the permanent log boom across the mouth of the Channel. Due to budgetary and other circumstances, including negotiations and efforts to compensate other property owners within the Slough, and to make arrangements to move vessels from the Slough, Defendant's project, including the majority of the work in the Mormon Channel, was put on hold and discontinued for a period of years, until approximately July 1, 2006, when construction work resumed which continues until the project is completed. At present, there is a permanent log boom blocking marine access to the Mormon Channel and to plaintiffs' property, which was installed on or about September of 2006.

30. As of the date of this Amended Complaint, defendant's actions have ended and precluded maritime access to the Mormon Channel area to the southeast of the log boom, thereby precluding any marine access to or egress from, nearly the

entire Maritime Center property, and depriving such property of valuable maritime uses. All of these activities have had an immediate, negative, and permanent impact upon the beneficial use and value of plaintiffs' Maritime Center property, and will continue to have such an impact, and have deprived plaintiffs of the economically viable use and value of its property. All of these activities will be and are substantially complete, and the taking and interference consummated, as of the filing of this Complaint.

WHEREFORE, plaintiffs pray Judgment as hereinafter set forth.

## FIRST CAUSE OF ACTION

## (FOR JUST COMPENSATION FOR GOVERNMENTAL TAKING)

31. Plaintiffs incorporate by reference, as though set forth in full, each and all of the allegations of Paragraphs 1-30 set forth above.

32. The Fifth Amendment of the United States Constitution provides that private property shall not be taken by the federal government for public use without payment of just compensation.

33. Defendant's construction and maintenance of its remediation project for the M&B Site, in the particulars alleged above, amounts to a public taking of and interference with plaintiffs' interests in private property, the Maritime Center property, further amounts to a public denial of and interference with the full, highest and best use and enjoyment of such private property, and permanently destroys economically viable uses of such property. Said taking and interference has been and is exclusively intended and carried out to accomplish the sole public purpose of alleged

environmental remediation with regard to alleged contamination emanating from the M&B Site, to the injury of the Maritime Center property. The purpose of Defendant USA's remediation project has nothing to do with the regulation of navigation. Under the Firth Amendment of the United States Constitution, such taking and interference require payment of just compensation to plaintiffs, and justify this action in inverse condemnation to recover just compensation, which defendant has refused to pay.

34. As a direct result of the permanent interference caused by Defendant's construction of its remediation project, plaintiffs' Maritime Center property, and the use thereof, and such property interests have been and continue to be damaged by such taking. Such damage includes, but is not limited to: the loss of maritime vessel access to and egress from almost the entire Maritime Center property; loss of docking and storage facilities; the loss of use of said property for commercial maritime and related uses; lost rentals and income; the loss of the highest and best use of said property; the loss of the economically viable uses of said property; inability to fully develop or build; loss of marketability; extensive diminution in the fair market value of said property; out-of-pocket expenditures for investigations, and mitigating steps; and litigation expenses, including attorney's fees, costs, and expert and consulting expenses.

35. The above-described damage was and continues to be substantially and/or proximately caused by the acts and omissions and public improvements of the defendant USA as alleged herein, which, as designed, constructed, and maintained, necessarily preclude marine access, barge and boat traffic from utilizing the Mormon Channel, and virtually all of the Maritime Center property.

36. As a result of the above-described taking plaintiffs have been damaged in an amount in excess of this Court's jurisdictional minimum, in the minimum sum of $1,250,000, or in such other sum according to proof at the time of trial herein. Plaintiffs will pray leave to amend this Amended Complaint to specify the exact amount of such damage in accordance with such proof, at the time of trial herein.

37. Plaintiffs have received no compensation from Defendant for any of the damage, interference or harm alleged herein, nor has Defendant taken any steps to alleviate, minimize, or mitigate such damage, notwithstanding requests by plaintiffs that it do so.

WHEREFORE, Plaintiffs pray judgment against the defendant United States of America, as follows:

## PRAYER

1. For compensatory damages in the sum of $1,250,000, or such other sum according to proof at the time of trial herein.

2. For interest on such compensatory damages as are awarded, from the date of taking, and as permitted by law.

3. For recovery of attorney's fees as permitted by law.

4. For recovery of expert witness/consultant fees as permitted by law.

5. For recovery of costs of suit herein incurred, as permitted by law.

6. For such other and further relief as the Court deems just and proper.

Dated: December 19, 2007

SHAPIRO BUCHMAN PROVINE & PATTON LLP

By: ______________________________

John H. Patton

Attorneys for Plaintiffs CRV Enterprises, Inc. and C. Ryan Voorhees

205889.1

# [PROPOSED] ORDER GRANTING MOTION FOR ORDER GRANTING LEAVE TO FILE FIRST AMENDED COMPLAINT

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**CRV ENTERPRISES, INC.**, a **California corporation,**

Plaintiff,

vs.

**THE UNITED STATES OF AMERICA,**

Defendant.

No. 06-660L

**ORDER GRANTING MOTION FOR ORDER GRANTING LEAVE TO FILE FIRST AMENDED COMPLAINT**

Judge George W. Miller

**ORDER**

The motion of plaintiff CRV Enterprises, Inc., for itself and on behalf of C. Ryan Voorhees, for entry of an Order granting plaintiff CRV Enterprises, Inc. and C. Ryan Voorhees leave to file the First Amended Complaint, came on regularly before the Court in the above-entitled matter, notice of same having been given to defendant United States of America. The Court having reviewed and considered the motion, there not being any opposition to same, and good cause appearing therefore, now, therefore,

**IT IS HEREBY ORDERED** as follows:

1. The motion is granted, and leave is granted for plaintiff CRV Enterprises, Inc. and C. Ryan Voorhees to file the proposed First Amended Complaint in the form attached to the Notice of Motion, adding C. Ryan Voorhees as a party plaintiff, within ten (10) days of entry of this Order.

2. That upon filing and service of the First Amended Complaint, defendant United States of America shall have the election of standing upon its current Answer, or thirty (30) days in which to file a response, unless further extended by agreement of the parties and/or Order of the Court.

Dated: ________________, 2008.

______________________________
George W. Miller, Judge

206393.1