John H. Patton, California SBN 069261
Matthew K. Wisinski, California SBN 195535
SHAPIRO BUCHMAN PROVINE & PATTON LLP
1333 North California Boulevard, Suite 350
Walnut Creek, CA 94596
Telephone: (925) 944-9700
Facsimile: (925) 944-9701
E-mail: jpatton@sbllp.com

Attorneys for Plaintiffs CRV Enterprises, Inc.
and C. Ryan Voorhees

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **CRV ENTERPRISES, INC.**, a **California corporation, C. Ryan Voorhees, an individual,**<br><br>Plaintiffs,<br><br>vs.<br><br>**THE UNITED STATES OF AMERICA,**<br><br>Defendant. | No. 06-660L<br><br>**DECLARATION OF JOHN H. PATTON IN SUPPORT OF OPPOSITION TO DEFENDANT UNITED STATES' MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**<br><br>Date: To be assigned by the Court (Telephonic scheduling conference requested)<br>Judge George W. Miller |

## DECLARATION OF JOHN H. PATTON

I, John H. Patton, state and declare as follows:

1. I am a an attorney at law licensed to practice before the Court of Federal Claims, and a partner of Shapiro Buchman Provine & Patton, LLP, attorneys of record for plaintiffs CRV Enterprises, Inc. ("CRV") and C. Ryan Voorhees in the above-entitled action. I make this Declaration in support of plaintiffs' opposition to defendant United States of America's ("the Government") motion to dismiss, or in the alternative, for summary judgment. I have personal knowledge of the facts stated

herein, except for those matters that are stated on information and belief, and as to those matters I am informed and believe that they are true and correct.

2. I hereby reaffirm, and incorporate by reference, each of the statements made in my Declaration dated April 9, and filed April 11, 2008 in support of plaintiffs' motion for summary judgment ("April 9 Declaration").

3. My law firm and I also participated as attorneys of record for plaintiff CRV in the previously-filed action against the Government for just compensation arising from a claimed taking of the same property which is the subject of this action ("Subject Property"). The previously-filed action was filed April 30, 2003, and was Case No. 1:03-cv-00867-GWM in this Court ("the prior action"). This action was filed April 30, 2003, because the Government had recently informed my client, CRV, that it would install its sand cap and log boom within the Old Mormon Slough ("OMS") during the Summer of 2003, and we then believed that it would not be premature to file such an action based on this announced course of conduct.

4. Due to circumstances having nothing to do with CRV or the property, the Government did not install its improvements within the OMS in 2003, or in 2004.

5. On March 8, 2004, the Government filed a Motion for Judgment on the Pleadings in the prior action. A true and correct copy of the face page and pages 16-19 of the Government's subsequently filed corrected motion is attached hereto, marked Exhibit 1, and incorporated herein by reference. As part of that motion, the Government argued that the action was premature, and not ripe, and thus subject to dismissal on the pleadings, and made the following statement on page 19:

> "CRV also fails to prove that withholding judicial decision would work undue hardship upon the parties. As explained above, CRV has not suffered a concrete injury because it has not been denied access to either the Old Mormon Slough or the Stockton Channel, and in fact still maintains access to the Old Mormon Slough via the Maritime Facility." [Ex. 1, at Page 19.]

6. As a result of the Government raising this ripeness argument and informing me and CRV that no improvements would be installed to deny my client's access to the OMS, I and other attorneys associated with my firm, primarily Bruce A. McIntosh (now a partner), engaged in a series of communications with the Government's attorney of record, at that time Andrew Goldmark, of the U.S. Department of Justice ("the Government's attorney"). During the course of these communications, the Government's attorney consistently conveyed to us that the Government felt that the prior action was premature and not yet ripe, because CRV had not yet had any rights or access taken or limited by any Governmental actions, and it was unclear when such action would occur.

7. At no time during our communications about the prior action did the Government's attorney ever indicate that he believed that the USEPA's Record of Decision for the McCormick & Baxter Superfund Site ("ROD") had triggered a takings claim, that any statute of limitations had begun to have run, or that any taking had yet occurred, or anything similar to that. To the contrary, the Government's position consistently was that the prior action was premature, because no taking of property rights had yet occurred.

8. As a result of these communications, the Government's attorney and my offices jointly discussed how best to handle the prior action, so as to conserve the Court's judicial resources, as well as the resources of our respective clients. Initially, we jointly determined and agreed to enter into a Stay Agreement to conserve those resources, expecting to lift the stay when an actual taking occurred. As a result, on May 21, 2004, the parties jointly filed a Motion to Stay the prior action, a true and correct copy of which is attached hereto, marked Exhibit 2, and incorporated herein by reference. As part of this motion, the parties made the following joint representation to this Court:

> "Accordingly, CRV acknowledges (and Defendant concurs) that unless and *until the EPA undertakes activities that Plaintiff believes blocks its navigational access, in part or in whole, to the Old Mormon Slough and the Stockton Channel, Plaintiff's claims as pled in this action are not ripe.*"
> [Ex. 2, emphasis added.]

9. On May 24, 2004, this Court entered an Order granting the joint Motion to Stay, a true and correct copy of which is attached hereto, marked Exhibit 3, and incorporated herein by reference. As part of this Order, the Court required the parties to file periodic status reports.

10. In compliance with the Court's May 24 Order (Exhibit 3), the parties prepared and filed periodic joint status reports in the prior action informing the Court as to the progress of the Government's proposed actions as they might impact the Subject Property and CRV's takings claim based thereon. Such joint reports were filed on July 23, 2004, August 19, 2004, September 24, 2004, October 21, 2004, November 19, 2004, January 3, 2005, February 1, 2005, February 15, 2005, and March 22, 2005. True and correct copies of the status reports filed on July 23, 2004, September 24, 2004, October 21, 2004, November 19, 2004, January 3, 2005, and February 1, 2005, 2005 are attached hereto, marked Group Exhibit 4, and incorporated by reference. Each of these informed the Court that "plaintiff's access to navigable waters is not presently blocked," and that the parties contemplated lifting the stay at such time as the EPA commenced "the work that may block plaintiff's access to the navigable water."

11. As time went on, and the parties continued to file joint status reports without any action by the Government to actually take any property rights of CRV, counsel for the parties had further communications, via phone, correspondence, and e-mail in the Spring of 2005 on how best to conserve judicial and private resources, without prejudicing the rights of any party. Bruce McIntosh and I participated in these communications on behalf of CRV, and Mr. Goldmark participated in them on

behalf of the Government. At no time during our communications in this regard did Mr. Goldmark ever indicate that he believed that the ROD had triggered a takings claim, that any statute of limitations had begun to have run, or that any taking had yet occurred. To the contrary, his position consistently was that the prior action was premature, because no taking had yet occurred. CRV and my firm tended to agree, especially since it was unclear when the Government was going to actually conduct any work within the OMS.

12. As a result of these communications in the Spring of 2005, and learning that no improvements would be installed in the OMS in 2005 either, the Government's attorney and my offices jointly discussed and agreed that the prior action could be dismissed without prejudice, on the basis that no taking had yet occurred and the action was premature, because not yet ripe, and that a new action could be filed seeking compensation, when such a taking actually occurred. We agreed to stipulate to a dismissal without prejudice on that basis. In doing so, no one ever indicated any argument or belief that the ROD had triggered a takings claim, that any statute of limitations had begun to have run, or that any taking had yet occurred. Had there been any such indication, no such stipulation would have been signed by my firm on behalf of the plaintiff, and CRV and my law firm would not have agreed to the dismissal of the prior action. The dismissal was entered into primarily because no taking had yet occurred, and because the parties wanted to conserve resources, until such a taking actually occurred. If necessary, I can produce to the Court copies of written correspondence and e-mails between my law firm and the Government's attorney, evidencing these sorts of communications in early 2005.

13. On May 4, 2005, the parties filed a Stipulation of Dismissal with this Court to accomplish these ends, which stipulation was without prejudice. On May

16, 2005, the Court entered that stipulation. A true and correct copy of the Stipulation is attached hereto, marked Exhibit 5, and incorporated herein by reference.

14. For the Court's convenience, and because of the volume of exhibits and paperwork filed by the Government, attached hereto, marked Exhibit 6, and incorporated herein by reference, is a true and correct copy of portions of the Dutra dredging plans apparently submitted in 1986 in support of its application for a dredging permit, being Sections A-A and B-B, pages 489-90 to Exhibit 14 to Government Exhibit 29 to this motion (Document 36-13, pages 23 and 24 of 32 on the Court's electronic system).

15. I have endeavored to find any publications in the Federal Register concerning the McCormick & Baxter Superfund Site, or Government decisions or actions connected therewith, including any concerning the ROD. I extensively and thoroughly searched both the United States Government Printing Office's ("USGPO") website for the Federal Register, and the Westlaw® website for Federal Register publications. The only references I could find to McCormick & Baxter were two publications in 2006, relating to actions by the Government with regard to its installation of the sand cap and log boom that year. I could find no other publication, earlier or later, in the Federal Register concerning or mentioning the ROD, although I made a careful and comprehensive search for any such publications.

16. Attached hereto, marked Exhibit 7, and incorporated herein by reference, is a true and correct copy of the complete substantive Third Supplemental Response provided by plaintiffs to Interrogatory No. 17 of the Government's First Set of Interrogatories in the above-entitled action.

17. Attached hereto, marked Exhibit 8, and incorporated herein by reference, is a true and correct copy of Figure 1.4, page 1.27 from the (Final)

January 1999 Surface Water Feasibility Study Report for the McCormick & Baxter Superfund Site ("M&B Site"), a partial copy of which is Govt. Exhibit 20 on this motion, but which Exhibit did not include this Figure. This Figure shows that the 1987 dredging extended to or beyond the eastern property line of the Subject Property.

18. I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct and of my own personal knowledge, except as to those matters stated on information and belief, and as to those matters, I believe them to be true and correct.

Executed this 29th day of May, at Walnut Creek, California.

John H. Patton

209276.1