**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CRV ENTERPRISES, INC. and<br>C. RYAN VOORHEES,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | Case No. 06-660L<br><br>Judge George W. Miller |

**UNITED STATES' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Defendant, the United States of America, hereby responds to Plaintiffs' Motion for Order Granting Interlocutory Summary Judgment on Liability Issues, Determining the Occurrence of a Compensable Government Taking of Private Property, dated April 11, 2008 (Doc. No. 30) ("Plaintiffs' Motion" or "Pls.' Mot.").[1/] For the reasons discussed below, the Court should deny Plaintiffs' Motion and grant the United States' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, dated April 15, 2008 (Doc. No. 35) ("Defendant's Motion" or "Def.'s Mot.").

First, Plaintiffs lack standing to pursue these claims because they did not own the Subject Property when the Environmental Protection Agency ("EPA") announced its intention to partially block boat traffic in the Old Mormon Slough ("Slough"). Plaintiffs' argument to the

[1/] Plaintiffs' Memorandum in Support of Plaintiffs' Motion, dated April 11, 2008 (Doc. No. 31) is hereinafter referred to as "Plaintiffs' Memorandum" or "Pls.' Memo." Similarly, the United States' Memorandum in Support of Defendant's Motion, dated April 15, 2008 (Doc. No. 36) is hereinafter referred to as "Defendant's Memorandum" or "Def.'s Memo."

contrary should be rejected.

Even if Plaintiffs had standing to sue, the Court should deny Plaintiffs' Motion. Plaintiffs raise two substantive arguments, only one of which warrants a substantive response. Plaintiffs first argue that EPA's installation of a sand cap and a log boom in the Slough effected a taking of Plaintiffs' "riparian rights in the majority of the Subject Property." Pls.' Memo. at 18. Plaintiffs' argument should be rejected because Plaintiffs fail to identify a compensable property interest that was physically taken by EPA, and ignore pre-existing limitations on state-created property interests.

Plaintiffs next presume that the United States will argue that just compensation is unavailable because EPA's actions served a navigational purpose. Plaintiffs then argue that EPA's actions did not serve a navigational purpose and, therefore, the doctrine of federal navigational servitude is inapplicable. The United States did not raise a defense based on the federal navigational servitude in its Motion, and that defense has no relevance to the several arguments presented in Defendant's Motion. Therefore, the Court need not address that issue now.

## I. Plaintiffs Did Not Own the Subject Property When EPA Decided to Partially Block Boat Traffic in the Slough

EPA decided to install a sand cap and log boom in the Slough in March 1999, years before Plaintiffs acquired the Subject Property. See Def.'s Ex. 20 at DOJ268 (January 1999 Report, showing approximate location of the log boom across the Slough); Def.'s Ex. 21 (March 1999 Record of Decision ("ROD") explaining EPA's selected remedy). EPA representatives publicized the decision in 1999, and discussed its plan with Dutra, the owners of the Subject Property. See Def.'s Ex. 18 (September 1998 EPA proposed plan); Def.'s Ex. 19 (October 1998

EPA announcement of proposed plan); Def.'s Ex. 29 ¶ 3 (declaration of Dutra's attorney discussing September 1999 meeting with EPA representatives about planned remedy). Dutra clearly understood the impact of EPA's selected remedy. See Def.'s Ex. 29 ¶ 10 (October 20, 1999 letter from Dutra's attorney to EPA discussing Dutra's concern about the partial loss of navigation). Moreover, on November 30, 2000, EPA emphatically rejected Dutra's proposed alternative remedy, stating that "based on our analysis of the information available, EPA does not believe a change in the remedy selected is warranted." Id. at DOJ460-61.

Dutra informed Plaintiff CRV of EPA's plans before Plaintiff CRV bought the Subject Property, and even included reference in the Option Agreement to contamination on the M&B Site "opposite the [Subject] Property, on Mormon Slough, the Slough itself, and the 'Hazardous Substances' located thereon and thereunder. . . ." Id. at DOJ442. Plaintiff CRV acquired the Subject Property in November 2002 (Plaintiff Voorhees acquired the property in October 2004), years after EPA announced its remedial decision. See Pls.' PFF ¶¶ 5, 6. As in Goodrich v. United States, any takings claim arose when the EPA issued its Record of Decision in 1999, not in 2006, when the EPA partially blocked boat traffic and the consequences of EPA's decision "became most painful." 434 F.3d 1329, 1333-34 (Fed. Cir. 2006). Plaintiffs did not purchase the Subject Property until well after that date, and therefore lack standing to sue.

To overcome this argument, Plaintiffs aver that they did not know that EPA was "definitely going to place a sand cap across the bottom of the [Slough], and curtain off the capped area with a permanent log boom" until 2003. Pls.' Memo. at 10. Plaintiffs' apparent subjective hope that the EPA might change its mind is not relevant to the objective analysis

presented in Goodrich.[2] By its regulatory action, EPA clarified the impact of its actions long before Plaintiffs acquired the Subject Property, and Plaintiffs decided to move forward with the purchase despite the selected remedy. See, e.g., Def.'s Ex. 29 at DOJ469A (October 29, 2002 letter from Plaintiffs acknowledging "a claim that the current owner [Dutra] has against the EPA," but stating that "I am confident that the value is there and that is why I intend to close escrow"). The Court should conclude that these claims accrued before Plaintiffs acquired the Subject Property, deny Plaintiffs' Motion, and grant the United States' Motion.

## II. Plaintiffs Fail to Identify a Compensable Property Interest That Was Physically Taken by EPA's Actions

### A. Plaintiffs' Argument Misconstrues the Nature of EPA's Actions

Plaintiffs argue that "[u]nder California law, the riparian right of access to the navigable part of waters is a valuable and protectable property right of the property owner." Pls.' Memo. at 15. EPA's installation of the sand cap and the log boom, however, did not physically interfere with Plaintiffs' alleged access rights from the Subject Property to the Slough. EPA did not build a fence or other obstacle on the Subject Property to block Plaintiffs from accessing the Slough from the foreshore of the Subject Property. Rather, EPA partially blocked boat traffic in a public waterway, an action that did not impact any compensable property right. See, e.g., Colberg, Inc. v. State, 432 P.2d 3, 8 (Cal. 1967) (*in bank*) (holding that riparian owners do not have a compensable private right to navigate on public waters).

Although EPA's actions had the effect of making a portion of the Slough non-navigable, Plaintiffs are still able to access the navigable portion of the Slough, and can still bring barges to

---

[2] Plaintiffs' subjective hope that EPA might reverse its position is unreasonable in any event. EPA gave Plaintiffs no reason to think that it would change its selected remedy.

and from the Stockton Deep Water Channel. See Def.'s Ex. 30 at 190:12-15 ("Q: There's navigational access from the [Subject Property] to the Stockton Deep Water Channel? A: Yes."); id. at 194:10-11 (Mr. Voorhees stating "[o]bviously [the Subject Property is] not landlocked."). Even with the log boom and the sand cap in place, then, Plaintiffs are able to freely use the barge loading area (the so-called "notched area") on the Subject Property and bring barges to and from the Stockton Deep Water Channel. Consequently, Laney v. United States, 661 F.2d 145 (Ct. Cl. 1981), which Plaintiffs cite at page 18 of their Memorandum for the principle that "a deliberate cutoff of access by all feasible routes," is plainly inapplicable. Indeed, before stating that a complete deprivation of access can effect a physical taking, the Laney court expressly noted that "[i]t has always been held that where the owner has access to his property on one, two, or three sides, that his access from the property to a street on one side is cut off is not a taking, even if the economic fruitfulness of the block is substantially impaired." 661 F.2d at 149.[3] EPA's actions did not cut off "access by all feasible routes," and therefore did not effect a physical taking of the Subject Property. Plaintiffs failed to identify a compensable property interest that EPA physically occupied. Therefore, the Court should deny Plaintiffs' Motion, and grant Defendant's Motion.

---

[3] Plaintiffs also rely on United States v. 50 Foot Right of Way of Servitude In, Over and Across Certain Land in the City of Bayonne, Hudson County, 337 F.2d 956 (3rd Cir. 1964), at page 18 of their memorandum. In that case, the United States directly condemned a right of way under Newark Bay, the bed of which was owned by Bergen Point Iron Works. Id. at 958. Bergen Point Iron Works argued that the pipes interfered with its ability to access the navigable portion of the bay from its banks. See id. at 959. Plaintiffs in the instant case, however, do not own the bed of the Slough. In addition, the government act here merely blocked boat traffic in the public waterway; it did not interfere with Plaintiffs' ability to access the navigable portions of the Slough.

### B. Plaintiffs' Argument Ignores Pre-Existing Limitations on State-Created Property Interests

Even if Plaintiffs had articulated a compensable property interest that was conceivably physically taken by EPA's actions, which they did not, Plaintiffs' argument ignores pre-existing limitations on State-created property interests, which preclude recovery. It is well-settled that landowners have no right to engage in an action that would constitute a public nuisance, and the government's limitations of such actions cannot result in a taking. See Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 491-92 (1987). The EPA determined that continued boat traffic in the Slough would damage the sand cap covering hazardous contaminants and stir up contaminants, leading to possible "re-surfacing and/or resuspension of the contaminated sediment." Def.'s Ex. 20 at DOJ285. Therefore, Plaintiffs' intended use of the Slough constitutes a public nuisance under California state law. Plaintiffs offer no discussion of this issue in their memorandum. Consequently, the evidence is undisputed that background principles of California state law prohibit the uses Plaintiffs now intend "in the circumstances in which the property is presently found." Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1031 (1992); see also Def.'s Memo. at 22-33 (discussing application of the nuisance defense).[4]

In addition, California's public trust doctrine is a pre-existing limitation on Plaintiffs' property interest, which protects the public's interest in traditional uses of waterways, such as

---

[4] Plaintiffs' vaguely-stated belief that they "do not necessarily agree that [Defendant's remedial actions] have had any 'remedial' effect," Pls.' Memo. at 8 n.4, is irrelevant to Plaintiffs' Motion. Moreover, Plaintiffs' unsupported belief does prevent the granting of Defendant's Motion. See RCFC 56(e) (stating party opposing motion "may not rest upon the mere allegations or denials of his pleading, but his response . . . must set forth specific facts showing that there is a genuine issue for trial").

navigation, commerce and fisheries, and ecological and recreational values. See Nat'l Audubon Soc. v. Superior Ct., 658 P.2d 709, 719 (Cal. 1983), cert. denied, 464 U.S. 977 (1983). EPA's actions were taken to contain the hazardous chemicals and protect human and ecological health, and the State agreed with and supported EPA's selected remedy. See Def.'s Ex. 22. EPA's actions accomplished no more than what the State could have accomplished under the public trust doctrine. Consequently, compensation is unavailable. See also Def.'s Memo. at 33-35 (discussing application of the public trust doctrine).

## III. The United States' Motion Did Not Raise the Federal Navigational Servitude, and the Court Should Not Address that Defense

The remainder of Plaintiffs' argument anticipates a defense that the United States did not raise in this briefing – namely that just compensation is not available due to the exercise of the federal navigational servitude. Although the United States identified the possible application of that defense in its Answer, the government did not raise the issue in its Motion. The viability of a defense based on the federal navigational servitude is not relevant to the several arguments discussed above or in the United States' Motion. Therefore, the issue is not properly before the Court and should not be resolved at this juncture.[5]

## IV. The Court Should Disregard Plaintiffs' Improper Insertion of Valuation Evidence

Over a year ago, the parties agreed to bifurcate this matter, and proceed only with the issue of liability. See Joint Preliminary Status Report, dated Feb. 12, 2007 (Doc. No. 9); see also Court Order, dated Feb. 26, 2007 (establishing a schedule for liability-related

---

[5] Plaintiffs' contention that navigational servitude is the "Government's sole defense to the requirement that it pay compensation," Pls.' Memo. at 20 n.9, is wrong, as it ignores the other six affirmative defenses that the United States identified in its Answer.

discovery). Despite this agreement and the Court's scheduling order, Plaintiffs improperly insert valuation evidence in their summary judgment motion. See Voorhees Decl., ¶ 35 (offering estimated value of sheet pile walls). Plaintiffs should not be permitted to violate the parties' agreement and the Court's Order, and the Court should disregard the proffered evidence.

In addition, Plaintiffs' suggested harm fundamentally misapprehends Plaintiffs' property interests. According to Plaintiffs' theory, as a result of EPA's actions, the "sheet pile wall [along a portion of the Subject Property] is now completely useless, and adds no value to the Subject Property, because it cannot be used." Id. ¶ 35. Plaintiff Voorhees then improperly offers his assessment of the value of the sheet pile walls. See id. As discussed at page 21 of the Defendant's Memorandum, however, Plaintiffs' interest in the sheet-pile walls is based upon Permit No. 9260, which was issued to Dutra in 1986 pursuant to the Rivers and Harbors Act. See Ex. 29 at DOJ480-83. Permit No. 9260 "does not convey any property rights. . . ." Id. at DOJ481. Consequently, Plaintiffs have no compensable property interest in the sheet-pile walls (or any other commercially-meaningful access point from the Subject Property to the Slough). Therefore Plaintiffs have no property right in the work performed pursuant to the permit, and cannot recover compensation for the loss of those improvements, even if the United States is found liable for a physical taking of the Subject Property. See City of Gettysburg v. United States, 64 Fed. Cl. 429 (2005) (similar permit released United States from liability for damage to the work performed pursuant to the permit).

## V. Conclusion

For the reasons stated above and in Defendant's Motion, the Court should deny Plaintiffs' Motion and grant Defendant's Motion.

Respectfully submitted this 30th day of May, 2008,

RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division

s/ William J. Shapiro
WILLIAM J. SHAPIRO
Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
U.S. Department of Justice
501 I Street
Suite 9-700
Sacramento, CA 95814
916-930-2207 (phone)
916-930-2210 (fax)

Attorney for Defendant

Of Counsel:

Laurie Williams
Assistant Regional Counsel
U.S. EPA Region 9
75 Hawthorne Street
San Francisco, CA 94105