**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

CRV ENTERPRISES, INC. and
C. RYAN VOORHEES,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

Case No. 06-660L

Judge George W. Miller

**UNITED STATES' RESPONSE TO PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Pursuant to Rule 56(h)(2) of the Rules of the Court of Federal Claims, the United States hereby submits this Response to Plaintiffs' Proposed Findings of Uncontroverted Facts, filed Apr. 11, 2008 (Doc. No. 34) ("Pls.' PFF"). For the Court's convenience, the paragraph numbers used below match the numbers of the paragraphs in Pls.' PFF.

**Paragraph 1:**

**Plaintiffs' Statement:**

Plaintiffs C. Ryan Voorhees and CRV Enterprises, Inc. ("CRV") are a private person and corporation who are residents of the State of California.

**Defendant's Response:**

Agreed.

**Paragraph 2:**

**Plaintiffs' Statement:**

Plaintiff C. Ryan Voorhees and his wife have at all times been the sole

shareholder/owners of Plaintiff CRV and C. Ryan Voorhees has at all times been the principal officer and manager of that company.

**Defendant's Response:**

Defendant is unable to agree or disagree with this proposed finding, and Plaintiffs offer no evidence other than the statement of Plaintiff Voorhees. However, the proposed finding is not relevant to any legal or factual issues addressed in the parties' cross motions, and the finding is assumed correct for purposes of these motions.

**Paragraph 3:**

**Plaintiffs' Statement:**

The property that it [sic] the subject of this action is situated in the City of Stockton, California, to the north of a body of water known as the "Old Mormon Slough" ("OMS"), and is legally described as San Joaquin County Assessor's Parcel No. 145-190-08 ("the Subject Property").

**Defendant's Response:**

Agreed.

**Paragraph 4:**

**Plaintiffs' Statement:**

At all times prior to the Government's actions within the OMS that are subject of this action, the OMS provided marine access and egress to and from the Subject Property, including the ability to dock vessels, to and from the Stockton Deep Water Channel ("SDWC") in the San Joaquin River, which flows through the San

Joaquin Delta and into the San Francisco Bay, and then ultimately into the Pacific Ocean.

**Defendant's Response:**

Agreed, with explanation. Defendant understands the phrase "the Government's actions within the OMS that are subject of this action" to mean EPA's installation of the sand cap and log boom across the OMS. Defendant agrees that the OMS is connected to the SDWC, which flows through the San Joaquin Delta, into the San Francisco Bay, and into the Pacific Ocean. Navigational access from the Subject Property to the OMS (and, ultimately, the Pacific Ocean) was possible before the EPA installed the sand cap and the log boom across the OMS and after the EPA took those actions. See Def.'s Ex. 30 at 190:12-15; id. at 194:10-11.

**Paragraph 5:**

**Plaintiffs' Statement:**

On October 2, 2000, and in exchange for valuable monetary consideration, plaintiff CRV acquired option rights to purchase the Subject Property at a price of $1,315,000, including all property rights and appurtenances thereto.

**Defendant's Response:**

Agreed.

**Paragraph 6:**

**Plaintiffs' Statement:**

On November 8, 2002, pursuant to the terms of the option agreement as amended, and in exchange for valuable monetary consideration plaintiff CRV acquired fee

title to the Subject Property, including all property rights and appurtenances thereto.

**Defendant's Response:**

Agreed, with explanation. The Grant Deed from Bill T. Dutra to Plaintiff CRV is dated October 29, 2002, but was apparently recorded on November 8, 2002. See Def.'s Ex. 1 at DOJ1.

**Paragraph 7:**

**Plaintiffs' Statement:**

On October 11, 2004, plaintiff CRV conveyed the Subject Property, along with adjacent properties that are not the subject of this claim, to plainitff C. Ryan Voorhees, including all property rights and appurtenances thereto.

**Defendant's Response:**

Agreed, with explanation. The Grant Deed from Plaintiff CRV to Plaintiff Voorhees is dated October 11, 2004, but was apparently recorded on October 20, 2004. See Def.'s Ex. 2 at DOJ4.

**Paragraph 8:**

**Plaintiffs' Statement:**

At all times when plaintiffs CRV and C. Ryan Voorhees acquired their interests in the Subject Property, and at all times prior to the Government's actions within the OMS that are the subject of this action, plaintiffs intended to use, and sought to develop, the Subject Property as a "marina" property, featuring navigable maritime access to the property, and docking of vessels at the property, by use of

the OMS, and its connection to the SDWC. These access rights were valuable appurtenances to the bundle of rights that were acquired with the Subject Property, and increase its use and value.

**Defendant's Response:**

Objection. Defendant objects to the first sentence of Paragraph 8 as irrelevant to any of the issues addressed in the parties' cross motions. To the extent a response is required, Defendant has no information regarding Plaintiffs' subjective intentions, but is unaware of any evidence that Plaintiffs took significant steps to plan, explore or develop the Subject Property as a "marina" property. Apart from a single undated plan, Pls.' Ex. 5, Plaintiffs have provided no documentary support, other than Plaintiff Voorhees' self-serving affidavit, for the allegation that Plaintiffs sought to develop the Subject Property.

Defendant objects to the second sentence of Paragraph 8 because it contains legal argument, rather than proposed factual findings, and is, therefore, improper. To the extent a response is required, Defendant denies the legal allegations contained in Paragraph 8. As discussed in the United States' Memorandum in Support of its Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, dated Apr. 15, 2008 (Doc. No. 36) ("Def.'s Mem."), Plaintiffs never had the alleged access rights that they complain were taken.

**Paragraph 9:**

**Plaintiffs' Statement:**

At all times after plaintiffs CRV and C. Ryan Voorhees acquired the Subject

Property, and at all times prior to the Government's actions within the OMS that are the subject of the action, plaintiffs, and their invitees and licensees, freely used the OMS for marine access and docking of vessels, without interference or assertion of any superior right in the OMS by any governmental entity, state or federal.

**Defendant's Response:**

Agreed in part, with explanation. Apart from minor temporary construction impacts that are not part of this lawsuit, see Def.'s Ex. 30 at 193:1-6, Defendant is not aware of any "interference . . . by any governmental entity, state or federal" limiting Plaintiffs' (or Plaintiffs' invitees' and licensees') use of the OMS for marine access and docking of vessels after Plaintiffs acquired the property and prior to the EPA's installation of the sand cap and the log boom.

Plaintiffs' allegation that there was no "assertion of any superior right in the OMS by any governmental entity, state or federal" is too vague to formulate a response. Although EPA has never claimed that it owns the OMS, EPA did issue a Record of Decision ("ROD") in March 1999, before Plaintiffs acquired the Subject Property. See Def.'s Ex. 21; see also Def.'s Ex. 18 (September 1998 EPA proposed plan); Def.'s Ex. 19 (October 1998 EPA announcement of proposed plan); Def.'s Ex. 29 ¶ 3 (declaration of Dutra's attorney discussing September 1999 meeting with EPA representatives about planned remedy). The ROD (together with other documentation) explained EPA's selected remedial actions, including the planned installation of the sand cap and access restrictions in the

Slough.

**Paragraph 10:**

**Plaintiffs' Statement:**

The Environmental Protection Agency ("EPA") is a governmental agency of the defendant United States of America ("USA") (collectively, "the Government").

**Defendant's Response:**

Agreed.

**Paragraph 11:**

**Plaintiffs' Statement:**

The former operational site of the McCormick & Baxter Creosoting Company ("M&B site") is situated to the south of the OMS, across the OMS from the Subject Property.

**Defendant's Response:**

Agreed.

**Paragraph 12:**

**Plaintiffs' Statement:**

Prior to 2000, the Government determined that the M&B site was a source of substantial contamination, requiring remedial action by the Government to address such contamination.

**Defendant's Response:**

Agreed.

**Paragraph 13:**

**Plaintiffs' Statement:**

On March 31, 1999, unknown to plaintiffs, the Government issued a Record of Decision, providing for certain remedial actions by the Government to address contamination at the M&B site.

**Defendant's Response:**

Defendant agrees that EPA issued the ROD on March 31, 1999. See Def.'s Ex. 21. However, Defendant disagrees that the issuance of the ROD was "unknown to plaintiffs," and the cited references offered by Plaintiffs do not support such an allegation. Certainly by the time Plaintiff CRV signed the Option Agreement with Bill T. Dutra on August 25, 2000 (which document explicitly states that "the [M&B Site], opposite the Property, on Mormon Slough, the Slough itself, and the 'Hazardous Substances' located thereon or thereunder, shall not be considered 'relevantly adjacent' to the Property"), Plaintiffs knew or should have known of the ROD. Def.'s Ex. 29 at DOJ442; see also Def.'s Ex. 18 (September 1998 EPA proposed plan); Def.'s Ex. 19 (October 1998 EPA announcement of proposed plan); Def.'s Ex. 29 ¶ 3 (declaration of Dutra's attorney discussing September 1999 meeting with EPA representatives about planned remedy).

**Paragraph 14:**

**Plaintiffs' Statement:**

In the Record of Decision, and otherwise, the Government also provided for certain remedial actions within the OMS, including (a) placement of a subsurface

sand cap over the sediment bottom of the OMS; and (b) installation of a permanent log boom across the OMS near its mouth ("the improvements").

**Defendant's Response:**

Agreed.

**Paragraph 15:**

Missing.

**Paragraph 16:**

**Plaintiffs' Statement:**

The Government's purpose in placing the subsurface sand cap over the sediment bottom of the OMS, ostensibly was to prevent contaminants in the OMS sediment bottom from migrating from the OMS into the SDWC.

**Defendant's Response:**

Agreed, with explanation. The EPA also determined that the sand cap would "bury and stabilize the contaminated sediments in place, thereby isolating them from the ecosystem and human exposure." Ex. 20 at DOJ239.

**Paragraph 17:**

**Plaintiffs' Statement:**

The Government's purpose in erecting the permanent log boom across the OMS, ostensibly was to prevent marine vessels from potentially disturbing the subsurface sand cap that was part of the Government's remedial action within the OMS.

**Defendant's Response:**

Agreed, with explanation. The EPA also determined that the log boom could "reduce direct human exposure to contaminated sediments in Old Mormon Slough and indirect exposure via consumption of fish caught in the slough. . . ." Ex. 20 at DOJ239; id. at DOJ252 (restricting boat access in the Slough would reduce "human exposure to contaminated fish and sediment").

**Paragraph 18:**

**Plaintiffs' Statement:**

On or about September of 2006, the Government installed its improvements within the OMS, occupying the OMS.

**Defendant's Response:**

Agreed.

**Paragraph 19:**

**Plaintiffs' Statement:**

Since installation, the improvements act as a physical barrier to occupy the OMS and prevent any marine vessels from entering or accessing the OMS, and preventing any marine vessels from traveling to or from, docking at, or loading at the Subject Property, except only a small portion located to the northwest of the improvements.

**Defendant's Response:**

Agreed in part; disputed in part. EPA's actions prevent marine vessels from moving south of the log boom. However, Plaintiffs are still able to use the

portion of the OMS to the north and northwest of the log boom. See Def.'s Ex. 5 (survey); Ex. 30:190:12-15 ("Q: There's navigational access from the [Subject Property] to the Stockton Deep Water Channel? A: Yes."); id. at 194:10-11 (Mr. Voorhees stating "[o]bviously [the Subject Property is] not landlocked."). Defendant disputes Plaintiffs' characterization that they have marine access to only a "small portion" of the Subject Property. According to an appraisal prepared by Dutra in 2002, for example, Plaintiffs retain marine access to approximately 60% of the improved portion of the waterfront area on the Subject Property. See Def.'s Ex. 37 (the relevant portion of this document is attached).

**Paragraph 20:**

**Plaintiffs' Statement:**

Since installation, the Government's improvements physically bar virtually all marine uses of the Subject Property and the OMS, except only a small portion located to the northwest of the improvements.

**Defendant's Response:**

Disputed. Plaintiffs retain full access to the "notched" barge loading area, which is located to the northeast of the improvements. See Def.'s Ex. 5 (survey); Ex. 30:190:12-15 ("Q: There's navigational access from the [Subject Property] to the Stockton Deep Water Channel? A: Yes."); id. at 194:10-11 (Mr. Voorhees stating "[o]bviously [the Subject Property is] not landlocked."). Defendant also disputes Plaintiffs' characterization that they have marine access to only a "small portion" of the Subject Property. According to an appraisal prepared by Dutra in 2002, for

example, Plaintiffs retain marine access to approximately 60% of the improved portion of the waterfront area on the Subject Property. See Def.'s Ex. 37.

**Paragraph 21:**

**Plaintiffs' Statement:**

The Government's actions within the OMS have, since installation, physically taken virtually all littoral, riparian, and marine rights and uses of the Subject Property, and deprived the Subject Property of those uses.

**Defendant's Response:**

Objection. The allegations in Paragraph 21 are legal argument, rather than proposed factual findings, and are, therefore, improper. To the extent a response is required, Defendant denies the legal allegations contained in Paragraph 21. As discussed in Defendant's Memorandum, Plaintiffs never had the alleged rights that they complain were taken.

**Paragraph 22:**

**Plaintiffs' Statement:**

The Government's actions within the OMS physically depriving the Subject Property of virtually all littoral, riparian, and marine rights and uses, have significantly reduced the use and value of the Subject Property.

**Defendant's Response:**

Objection. The allegations in Paragraph 22 are legal argument, rather than proposed factual findings, and are, therefore, improper. To the extent a response is required, Defendant denies the legal allegations contained in Paragraph 22. As

discussed in Defendant's Memorandum, Plaintiffs never had the alleged rights that they complain were taken. In addition, Plaintiffs' allegation about a loss of value is improper, as this case has been bifurcated, and the parties have not yet engaged in valuation-related discovery.

**Paragraph 23:**

**Plaintiffs' Statement:**

The Government has refused to justly compensate plaintiffs C. Ryan Voorhees and CRV for its actions physically depriving the Subject Property of virtually all littoral, riparian, and marine rights and uses, or for the loss in value to the Subject Property resulting from that physical deprivation.

**Defendant's Response:**

Agreed in part; Disputed in part. Defendant agrees that it has not given any money to Plaintiffs in order to settle the claims raised in this lawsuit. (Defendant has negotiated payments to CRV for certain discrete, temporary activities related to EPA's remediation activities, but those payments did not settle the claims Plaintiffs raise here). For the reasons set forth in the Defendant's Memorandum, however, Defendant disputes that it has acted unjustly, that Plaintiffs are entitled to just compensation, or that Plaintiffs' allegations have any merit.

**Paragraph 24:**

**Plaintiffs' Statement:**

The Government's permanent improvements within the OMS constitute Government Superfund cleanup measures that physically occupy and take the

OMS where situated.

**Defendant's Response:**

Agreed in part; Disputed in part. Defendant agrees that EPA's actions were taken pursuant to the Comprehensive Environmental Response Compensation and Liability Act of 1980, 42 U.S.C. §§ 9601, et seq. (2000) ("the Superfund law"). For the reasons set forth in the Defendant's Memorandum, Defendant disputes that EPA's actions effected a taking of the Subject Property.

**Paragraph 25:**

**Plaintiffs' Statement:**

The Government's installation of permanent improvements within the OMS does not in any way assist or facilitate navigation within the OMS; rather, such installation has destroyed the navigability of the OMS.

**Defendant's Response:**

Agreed in part; Disputed in part. Defendant agrees that EPA's actions did not assist or facilitate navigation within the OMS. Defendant disputes that EPA's actions "destroyed the navigability of the OMS," since such navigation in the OMS would have constituted a public nuisance under State law even in the absence of EPA's actions.

Respectfully submitted this 30th day of May, 2008,

RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division

s/ William J. Shapiro
WILLIAM J. SHAPIRO
Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
U.S. Department of Justice
501 I Street
Suite 9-700
Sacramento, CA 95814
916-930-2207 (phone)
916-930-2210 (fax)

Attorney for Defendant

Of Counsel:
Laurie Williams
Assistant Regional Counsel
U.S. EPA Region 9
75 Hawthorne Street
San Francisco, CA 94105

# Exhibit 37

# APPRAISAL OF

1404 WEST WEBER AVENUE
CONSISTING OF 9.54 ACRES
ON THE NORTH BANK OF THE
OLD MORMON CHANNEL
IN STOCKTON, CALIFORNIA

## AS OF

FEBRUARY 27, 2002

## APPRAISAL FOR

THE DUTRA GROUP
MR. BILL DUTRA
1000 POINT SAN PEDRO ROAD
SAN RAFAEL, CALIFORNIA, 94901

**STEPHEN R. CLARK**
**APPRAISER & CONSULTANT, INC.**

## (17.0) VALUATION IN THE AFTER CONDITION

In my review of the Record of Decision, dated March 31, 1999, the EPA does not explicitly state that the log boom will permanently restrict access to Old Mormon Channel, however there are many references to operations and maintenance budgets with 30 year horizons. For all practical purposes a 30 year term with the potential for longer duration is effectively a permanent situation. Therefore the after condition valuation is based on the assumption that the EPA's remediation plan is permanent and will forever prevent any water access to the south side of the subject property.

The primary effect that the EPA's project will have on the subject is the removal from productive use of the sheet pile wall which is a distance of about 300 feet along the waterfront. The sheet pile wall represents about 40% of the entire improved waterfront area on the subject property. Also the EPA's project will, in effect, prevent any attempt to expand the waterfront improvements any farther to the east. The barge slip will still provide access to the deep water channel and this area can generally function as it has in the past. However the location of the log boom as shown on Page 18 of this appraisal will somewhat restrict turning areas in the Old Mormon Channel.

Exhibit 37 to the United States' Motion