**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| CRV ENTERPRISES, INC. and C. RYAN VOORHEES, Plaintiffs, | Case No. 06-660L |
| v. | |
| THE UNITED STATES, Defendant. | Judge George W. Miller |

**UNITED STATES' MOTION TO STRIKE**
**AND**
**MOTION TO STAY BRIEFING SCHEDULE**

Pursuant to Rule 37 of the Rules of the Court of Federal Claims ("RCFC"), Defendant, the United States of America, hereby moves to strike the declaration of Michel Benoit, Ph.D., filed May 30, 2008 (Doc. No. 40) ("Benoit Declaration"), submitted in support of Plaintiffs' Memorandum of Points and Authorities in Opposition to United States' Motion to Dismiss, or in the Alternative, for Summary Judgment, filed on May 30, 2008 (Doc. No. 44) ("Plaintiffs' Response"). Plaintiffs offer the Benoit Declaration as expert evidence to support Plaintiffs' inverse condemnation claim. As discussed below, Plaintiffs failed to disclose the identity of Dr. Benoit during discovery. Therefore, Plaintiffs' submission of the Benoit Declaration violates the disclosure requirements set forth in RCFC 26(a)(2)(C), which obligate a party to disclose expert testimony "at least 70 days before the scheduled close of discovery. . . ." Defendant further moves to strike all portions of Plaintiffs' Response that quote or cite the Benoit Declaration.

The United States also moves to strike Plaintiffs' Response because Plaintiffs violated the page limitation established under Rule 5.3(b)(2). Plaintiffs' Response is forty-five pages

long, or fifteen pages over the page limit. Plaintiffs never requested, and the Court never granted, leave to exceed the page limit, and the Court, therefore, should strike their brief.

Finally, the United States requests that the Court stay the current briefing schedule until this motion is resolved. In support of this motion, Defendant states as follows.

## I. Motion to Strike the Benoit Declaration for Violation of Rule 26

### A. Procedural History and Discovery Schedule

On September 19, 2006, Plaintiff CRV Enterprises, Inc. ("CRV") filed its initial Complaint, alleging a Fifth Amendment taking as a result of the actions of the Environmental Protection Agency ("EPA") in the Old Mormon Slough, a heavily-contaminated waterway adjacent to Plaintiff's property. The United States answered on December 20, 2006. See Answer, dated Dec. 20, 2006 (Doc. No. 8). Among other defenses, the United States affirmatively asserted that Plaintiff CRV's claim failed because the "actions of the United States were taken to abate a nuisance or were taken within other preexisting limitations on Plaintiff's property rights." Id. at 8; see also Lucas v. S. Carolina Coastal Council, 505 U.S. 1003, 1031 (1992).[1/] On February 12, 2007, the parties filed a Joint Preliminary Status Report, in which the United States identified one of the relevant issues as "Whether the government's actions were

---

[1/] In April 2003, Plaintiff CRV filed an earlier lawsuit, alleging the same cause of action. See CRV Enterprises, Inc. v. United States, Case No. 03-867L (filed Apr. 30, 2003) ("CRV I"). The United States' Answer in CRV I also alleged that the "actions of the United States were taken to abate a nuisance." See Answer in CRV I, dated June 30, 2003, at 8; see also Joint Preliminary Status Report in CRV I, dated Aug. 25, 2003, at 2-3 ("The parties agree that the relevant issues [include] . . . (5) Whether the character of the government's action was to abate a nuisance?"). The United States' Motion for Judgment on the Pleadings, filed on March 3, 2004 in CRV I argued explicitly that "CRV has no property interest in activities that would result in a condition of nuisance." Def.'s Mot. for J. on the Pleadings in CRV I, dated Mar. 3, 2004, at 34. Therefore, the United States first identified a nuisance defense to Plaintiffs in June 2003, approximately five years ago.

taken to abate a nuisance?" Joint Preliminary Status Report at 3, dated Feb. 12, 2007 (Doc. No. 9-1).

The Court filed a scheduling order on February 26, 2007, which required the parties to exchange initial disclosures no later than March 5, 2007, and to complete liability-related discovery no later than October 1, 2007.[2] Plaintiff's initial disclosures did not identify Dr. Benoit, or any expert witness. See Ex. 1. Rather, Plaintiff stated its intention to "make its disclosures as to the identity of persons who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence at least 70 days before the scheduled close of discovery, pursuant to Rule 26(a)(2)(C)." Id. at 7. Plaintiffs never identified any expert witness.

On December 5, 2007, this Court granted the parties' motion to extend the time period to complete discovery, and ordered that liability-related discovery would close on January 18, 2008 (Doc. No. 20). On January 23, 2008, Plaintiff CRV filed an Amended Complaint to add C. Ryan Voorhees as a plaintiff (Doc. No. 25). The United States answered Plaintiffs' Amended Complaint on February 5, 2008 (Doc. No. 29). Consistent with the United States' initial Answer, the United States' Answer to the Amended Complaint again identified a nuisance defense to Plaintiffs' claims. See Def.'s Answer to Am. Compl. at 8.

During the discovery period, the parties engaged in extensive written discovery and both sides noticed depositions of certain witnesses. The United States transmitted several discovery requests to Plaintiffs, including some requests specifically related to the nuisance issue. Among

[2] Plaintiff CRV's delay in transmitting its initial disclosures and discovery responses resulted in the filing of Defendant's Motion to Compel, dated June 11, 2007 (Doc. No. 11). The Court resolved the Defendant's Motion to Compel in a written order, dated June 12, 2007 (Doc. No. 12).

the written discovery the United States transmitted to Plaintiffs was the following Request for Admission: "The Remediation Project Improvements were undertaken in order to address a nuisance, specifically to prevent the further spread of contaminants that were a threat to human health and the environment." Def.'s Ex. 4 (Request for Admission No. 6), at 13; see also id. at 11 (Interrog. No. 17). On June 12, 2007, Plaintiffs responded that it had

> no information that the EPA's project actually did or does what RFA No. 6 states, whether the McCormick & Baxter site was a 'nuisance,' whether the EPA's project has been effective "to prevent the further spread of contaminants," or whether a "threat to human health" existed. CRV is informed and believes that the EPA acted on behalf of the public in undertaking the McCormick & Baxter project, and that it intended that its actions would fulfill a public purpose by preventing or limiting the spread of environmental contamination.

Def.'s Ex. 2 (Pls.' Resp. to Interrog. No. 17, dated June 12, 2007). Although the United States asked Plaintiffs to identify all "Person(s) who has (have) knowledge of said fact(s)" relevant to Plaintiffs' answer, Plaintiffs did not identify Dr. Benoit or any other expert. See id.

On March 5, 2008, approximately six weeks after the close of discovery, Plaintiffs amended their June 12, 2007 response, to state:

> As a result of discovery, CRV and Voorhees now believe that the McCormick & Baxter site itself likely was a "nuisance," and that the EPA's clean-up efforts on that site may have helped to "prevent the further spread of contaminants" from that site. CRV and Voorhees are informed and believe that the EPA acted on behalf of the public in undertaking the McCormick & Baxter project, and that it intended that its actions would fulfill a public purpose by preventing or limiting the spread of environmental contamination.

Def.'s Ex. 3 (Pls.' Supplemental Resp. to Interrog. No. 17, dated Mar. 5, 2008). Plaintiffs also stated that they believed the evidence did not support a conclusion that EPA's actions "reduced any nuisance or contamination in the Mormon Slough" or that "EPA's actions have significantly prevented or reduced any spread of contaminants. . . ." Id. Again, Plaintiffs did not identify any

expert witness in their discovery response.

On April 15, 2008, approximately three months after the close of discovery, the parties filed cross motions for summary judgment. On May 30, 2008, the parties filed simultaneous responses. At no point prior to May 30, 2008, when Plaintiffs filed the Benoit Declaration, did Plaintiffs disclose the identity or opinions of Dr. Benoit to the United States.

**B. Plaintiffs' Submission of the Benoit Declaration Violates Rule 26**

Dr. Benoit identifies himself as a "professional engineer," Benoit Decl. ¶ 1, and he offers a variety of opinions related to Plaintiffs' claims. The Benoit Declaration is in the form of an expert report, and Plaintiffs clearly intend to offer the declaration as expert testimony. Plaintiffs do not indicate when they hired Dr. Benoit, how long he has worked for Plaintiffs, or how much compensation Plaintiffs have paid him for his services. Accordingly, even if Plaintiffs' disclosure was timely, the Benoit Declaration does not comply with Rule 26(a)(2)(B). Dr. Benoit has not visited Plaintiffs' property, and his opinions appear to be based entirely on a review of some of the documents prepared by EPA during its decades-long involvement with this project. Despite the obvious deficiencies in his knowledge base, Dr. Benoit offers his opinion about the "nature of the contaminants that have been found in the [Old Mormon Slough]" and the reasonableness of EPA's selected remedy. Plaintiffs rely heavily on the untimely Benoit Declaration to second-guess EPA's conclusions about the selected CERCLA remedy, in an effort to create a triable issue of fact with respect to the parties' cross motions, particularly with respect to the issue of whether EPA's actions were taken to abate a nuisance. See, e.g., Pls.' Resp. at 34-35 (citing the Benoit Declaration to second guess EPA's decision to

block boat traffic in the slough in order to protect the sand cap).[3]

Plaintiffs cannot reasonably argue that they were unaware that the United States intended to raise a nuisance-based defense. The United States specifically identified a nuisance defense in its initial Answer, filed in December 2006; in the parties' Joint Preliminary Status Report, filed in February 2007; and in the United States' Answer to the Amended Complaint, filed in February 2008. The United States asked discovery questions, specifically focused on the nuisance defense, in order to force Plaintiffs to identify any facts or witnesses they intended to offer to address that issue. Plaintiffs cannot reasonably claim surprise at seeing the discussion of a nuisance defense in the United States' motion for summary judgment.[4] Despite the fact that the United States made Plaintiffs aware of its intention to raise this defense at the outset of this lawsuit, Plaintiffs never identified any expert witness on this subject – or any subject – during the lengthy period of discovery in this case.

In clear violation of the Court's rules, Plaintiffs disclosed their expert nearly four months after the close of discovery, in the middle of motions briefing. Rule 26 is designed to avoid this situation by explicitly requiring full and early disclosure of expert witness testimony. See Centex Corp. v. United States, 71 Fed. Cl. 40, 54 (2006) (purpose of Rule 26(a)(2) is to "encourage the timely exchange of expert information"). Rule 26(a)(2)(B) requires a party to

---

[3] Plaintiffs' use of the Benoit Declaration is legally erroneous since Plaintiffs cannot collaterally challenge EPA's selected remedy. See Hanford Downwinders Coal., Inc. v. Dowdle, 71 F.3d 1469, 1474 (9th Cir. 1995) ("once an activity has been classified as a CERCLA § 9604 removal or remedial action, § 9613(h) 'amounts to a blunt withdrawal of federal jurisdiction'").

[4] In fact, the United States identified a nuisance defense in June 2003, in its answer to Plaintiff CRV's original lawsuit, and briefed that issue in March 2004 in its motion for judgment on the pleadings in CRV's first lawsuit.

transmit a "written report prepared and signed by the witness" that "shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor," thereby avoiding unfair surprise to the other side. Further, the rules require the party to make these disclosures "at the times and in the sequence directed by the court," or "at least 70 days before the scheduled close of discovery" if the court issues no other direction. RCFC 26(a)(2)(C) (emphasis added).

According to Rule 26(a)(2)(C), Plaintiffs were required to disclose the identity and expert opinions of Dr. Benoit no later than November 9, 2007, seventy days before the close of discovery. Plaintiffs filed the Benoit Declaration on May 30, 2008, 203 days after they were required to do so. Plaintiffs' submission is untimely and violates Rule 26.

**C. Plaintiffs' Violation of the Rules Prejudices the United States**

The United States had no reason to retain or identify any experts to address the issues presented in these cross motions. All of the documentary evidence supports the United States' position, and Plaintiffs declined to identify any experts in this case on any subject, including to challenge the substance of EPA's CERCLA documents or the appropriateness of EPA's selected remedy. The United States relied on Plaintiffs' non-disclosure in defending this lawsuit, and reasonably assumed that Plaintiffs would abide by the Court's rules. The parties engaged in lengthy discovery on this and other issues, and the United States formulated its defense on the information available to it. Had Plaintiffs timely disclosed Dr. Benoit instead of waiting until after the close of discovery, the United States would have had an opportunity to depose Dr. Benoit and retain a rebuttal expert. Plaintiffs' violation of Rule 26, however, forecloses those options. To allow Plaintiffs to introduce new expert testimony now, in the middle of summary judgment briefing, would severely prejudice the United States.

**D. The Court Should Strike the Benoit Declaration**

A party that "without substantial justification" fails to comply with RCFC 26(a) "is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." RCFC 37(c)(1); O2 Micro Intern. Ltd. v. Monolithic Power Sys., Inc., 467 F.3d 1355, 1369 (Fed. Cir. 2006) (court did not abuse its discretion in excluding untimely expert evidence). There is no question that Rule 37 applies to summary judgment proceedings. See Lohnes v. Level 3 Commc'ns, Inc., 272 F.3d 49, 60 (1st Cir. 2001) (holding that Rule 37 applies with "equal force" to trial and to motions for summary judgment); Trost v. Trek Bicycle Corp., 162 F.3d 1004, 1009 (8th Cir. 1998) (applying Rule 37 to preclude consideration of a late expert report in the context of a summary judgment motion). See also Wright & Miller, 8A Fed. Practice & Procedure Civil 2d, § 2289.1 (noting that Rule 37(c) "applied not only at trial, but also with respect to any motion, such as a motion for summary judgment").

In Level 3 Communications, for example, the defendant moved for summary judgment following the close of discovery. 272 F.3d at 52. Plaintiffs' opposition included an affidavit from an expert who was not disclosed until three months after the close of discovery and after the defendant had moved for summary judgment. Id. at 60. In affirming the district court's exclusion of the affidavit, the Court of Appeals for the First Circuit stated,

> The appellant's response to the motion to strike [the expert's affidavit] was completely bereft of any explanation for neglecting to identify the expert before the close of discovery, and prejudice is apparent. The appellant's failure to unveil his expert until after Level 3 had moved for summary judgment deprived Level 3 of the opportunity to depose the proposed expert, challenge his credentials, solicit expert opinions of its own, or conduct expert-related discovery. This is exactly the type of unfair tactical advantage that the disclosure rules were designed to eradicate.

Id. The Court should apply the same reasoning in the instant matter.

Plaintiffs offer no justification for their untimely disclosure, and none is apparent. The United States is severely prejudiced by Plaintiffs' violation of the Court's rule. For these reasons, the United States respectfully requests that the Court strike the Benoit Declaration and all reference to that document in Plaintiff's Response.

**II. Motion to Strike Plaintiffs' Response for Violation of Rule 5.3(b)(2)**

The United States also moves to strike Plaintiffs' Response on the ground that Plaintiffs violated the page limitation established by Rule 5.3(b)(2): "Except by leave of the court on motion, reply briefs or memoranda shall not exceed 20 pages . . . or 30 pages where a response to a motion is included." Therefore, Rule 5.3(b)(2) limited Plaintiffs' Response to thirty pages. Plaintiffs' Response is forty-five pages in length. Plaintiffs did not file a motion to exceed the page limitation, and the Court did not grant Plaintiffs leave to exceed the page limit. Therefore, Plaintiffs violated Rule 5.3(b)(2), and the Court should strike Plaintiffs' Response.

**III. Motion to Stay Briefing Schedule**

The United States respectfully requests that the Court stay the current briefing schedule until it resolves the issues raised in this motion. According to the parties' agreed-upon schedule, the parties are required to file their reply memoranda on June 16, 2008. See Joint Mot. for Modification of Schedule, dated Jan. 25, 2008 (Doc. 26), at 2. Resolution of the issues raised in this motion will significantly impact preparation of the United States' reply memorandum. Moreover, it is highly prejudicial to the United States to be required to reply to Plaintiffs' overly-long forty-five page response memorandum within the same time frame that Plaintiffs will have to file a reply to the United States' nine page opposition memorandum. See United States'

Opp'n to Pls.' Mot. for Summ. J., dated May 30, 2008 (Doc. 45). For these reasons, the United States requests that the Court suspend the current briefing schedule until after it resolves this motion.

Respectfully submitted this 6th of June, 2008.

RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division

s/ William J. Shapiro
WILLIAM J. SHAPIRO
Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
U.S. Department of Justice
501 I Street
Suite 9-700
Sacramento, CA 95814
916-930-2207 (phone)
916-930-2210 (fax)

Attorney for Defendant

Of Counsel:

Laurie Williams
Assistant Regional Counsel
U.S. EPA Region 9
75 Hawthorne Street
San Francisco, CA 94105