John H. Patton, California SBN 069261
Matthew K. Wisinski, California SBN 195535
SHAPIRO BUCHMAN PROVINE & PATTON, LLP
1333 North California Boulevard, Suite 350
Walnut Creek, CA 94596
Telephone: (925) 944-9700
Facsimile: (925) 944-9701
E-mail: jpatton@sbllp.com

Attorneys for Plaintiffs CRV Enterprises, Inc.
and C. Ryan Voorhees

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **CRV ENTERPRISES, INC., a California corporation, C. Ryan Voorhees, an individual,**<br><br>Plaintiffs,<br><br>vs.<br><br>**THE UNITED STATES OF AMERICA,**<br><br>Defendant. | No. 06-660L<br><br>**PLAINTIFFS CRV ENTERPRISES, INC. AND C. RYAN VOORHEES' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE**<br><br>Judge: George W. Miller<br><br>Accompanying Papers: Declaration of John H. Patton |

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs C. Ryan Voorhees and CRV Enterprises, Inc. ("CRV") respectfully submit the following Memorandum of Points and Authorities in opposition to defendant United States of America's ("the Government") motion to strike: 1) the Declaration of J. Michel Benoit, Ph.D., filed May 30, 2008 in support of plaintiffs' opposition to defendant's motion for summary judgment; and 2) plaintiffs' Memorandum of Points and Authorities, filed May 30, 2008, in opposition to defendant's motion for summary judgment.

# TABLE OF CONTENTS

Page(s)

I. PRELIMINARY STATEMENT .......... 1

II. PROCEDURAL BACKGROUND .......... 2

A. It is defendant's burden, not plaintiffs', to prove the defense. .......... 2

B. Discovery revealed no issue about the log boom or boat traffic. .......... 3

C. The summary judgment cross-motions. .......... 7

III. LEGAL ARGUMENT .......... 9

A. Plaintiffs were not required to disclose Mr. Benoit as an expert or percipient witness for trial under RCFC Rule 26, nor did they conceal his identity from the defense. .......... 9

B. Defendant has not been prejudiced by the Benoit Declaration, or by any failure to disclose Mr. Benoit as a potential witness. .......... 11

C. Plaintiffs would be severely prejudiced if the Benoit Declaration is stricken, and in its absence the Court accepts that the Government has established that its log boom actually abates a nuisance .......... 13

D. Far less drastic relief is available in any case. .......... 13

E. Good reasons justify the length of plaintiffs' opposition brief, and defendant's claim of prejudice can be met by providing additional time and pages. Striking plaintiffs' brief would deprive them of any opportunity to have this motion heard on the merits, and would be extremely prejudicial. .......... 15

IV. CONCLUSION .......... 17

# TABLE OF AUTHORITIES

Page(s)

## Cases

*John R. Sand & Gravel Co. v. U.S.*, 60 Fed.Cl. 230 (2004) ........ 1, 3

*Johnson Electric North America, Inc. v. Mabuchi Motor America Corp.*, 77 F.Supp.2d. 446 (S.D.N.Y.1999) ........ 12

*McNerney v. Archer Daniels Midland Co.*, 164 F.R.D. 584 (W.D.N.Y.1995) ........ 12

*Meyers v. Asics Corp.*, 974 F.2nd 1304 (Fed. Cir. 1992) ........ 3

*Montefiore Medical Center v. American Protection Ins. Co.*, 226 F.Supp.2nd 470 (S.D.N.Y. 2002) ........ 12

*The Pantry, Inc. v. Stop-N-Go Foods, Inc.*, 777 F.Supp. 713, 733 (S.D. Ind. 1991) ........ 12

*Ventra v. United States*, 121 F.Supp.2d 326 (S.D.N.Y.2000) ........ 12

## Rules

Federal Rules of Evidence, Rule 702 ........ 9

Federal Rules of Evidence, Rule 703 ........ 9

Federal Rules of Evidence, Rule 705 ........ 9

Rules of the Court of Federal Claims, Rule 5(b)(1) ........ 16

Rules of the Court of Federal Claims, Rule Rule 5.3(b)(2) ........ 16

Rules of the Court of Federal Claims, Rule 26 ........ 2, 3, 10

Rules of the Court of Federal Claims, Rule 26(a)(2)(A) ........ 9

Rules of the Court of Federal Claims, Rule 26(a)(2)(C) ........ 9, 10, 11

Rules of the Court of Federal Claims, Rule 30(b)(6) ........ 5, 6, 7

## I. PRELIMINARY STATEMENT

Throughout this case, the Government has repeatedly taken the position that the wisdom, propriety, and efficacy of its actions within the Old Mormon Slough ("OMS") are completely irrelevant to the outcome of plaintiffs' takings claim. This is an argument defendant submitted in support of its motion for summary judgment (Section IIID, pages 14-15, defendant's supporting Memorandum, filed April 15, 2008), and now reiterates in footnote 3 of its brief in support of this motion: "Plaintiffs cannot collaterally challenge EPA's selected remedy." But plaintiffs' taking case has never sought to collaterally challenge the remedy, and plaintiffs have not made such an argument as part of their case, either in discovery that has been conducted, or in their own motion for summary judgment. As pointed out on page 19 and footnote 8 of plaintiffs' Memorandum in support of their motion for summary judgment (filed April 11, 2008):

> "The rule is that in physical takings cases, the Government owes compensation to the property owner regardless of the public interests served by the taking.[8] *John R. Sand & Gravel Co. v. U.S., supra,* 60 Fed.Cl. 230, 236 (2004)."
>
> "8. Thus, we need not debate the wisdom or efficacy of the Government's actions. They were committed for a public purpose, and they are a taking."

But the Government cannot have it both ways, and now employ that position as both sword and shield, to plaintiffs' prejudice. That is exactly what it seeks to do on this motion, and in its own summary judgment motion. While proclaiming that the efficacy of its actions is irrelevant, it also inconsistently asserts as a basis for judgment, that its actions/remedy within the OMS have "abated a nuisance."

Realizing that its case is doomed by the truth (its log boom blocking the OMS does not "abate" any "nuisance") the Government now seeks to avoid its obligation to pay just compensation by creating blindside procedural arguments that would turn justice on its head. Rather than face the opposition on its merits (which it cannot do),

the Government seeks to eviscerate the opposition under the guise that it has somehow been surprised or prejudiced. But if there has been surprise or prejudice, it is a product of the Government's own maneuvering, and cannot now be twisted by the defense to deprive plaintiffs of their Constitutional rights to just compensation. And if the Court is at all concerned that the playing field might be skewed, something plaintiffs never intended and do not believe has occurred, then there are far less drastic measures that can be taken that will ensure that these cross-motions are decided on their merits.

## II. PROCEDURAL BACKGROUND

### A. It is defendant's burden, not plaintiffs', to prove the defense.

The starting point is the defense itself. Plaintiffs acknowledge that the Government has pleaded, albeit in conclusory (not factual) form, the affirmative defense of "abatement of a nuisance." Yet that pleading does not allege that plaintiffs were maintaining or threatening to maintain a nuisance or how; that vessels navigating within the OMS would constitute a nuisance or how; or that erection of a log boom across the mouth of the OMS was necessary or effective to "abate" a nuisance or how. The assertion is just another among a laundry list of conclusory defenses alleged that are inapplicable to this case. Far more important to the issue of expert disclosure is whether there was any *proof* to support the defense.[1]

Proof on this issue is not part of a plaintiffs' case on a takings claim. Rather, the burden of identifying the background principles of state property or nuisance law,

[1] For instance, the Government also alleged its navigational servitude as an affirmative defense in its answers. Yet now, on these motions, it has abandoned that defense. Were plaintiffs supposed to designate an expert witness in their Rule 26 disclosure to testify that the log boom does not in any way assist in furthering the interests of navigation, in case the Government argued (again without proof) that it did? The mere fact that an affirmative defense is pleaded does not of itself alone trigger an obligation of disclosure. Otherwise, most cases would require the disclosure of dozens of experts. Parties are not required to tilt at windmills.

that would prohibit the use of the land plaintiff intends, as well as setting out the relevant contours of that law, rests with the Government. *John R. Sand & Gravel Co. v. United States*, 60 Fed.Cl. 230, 240 (2004). Moreover, the Government also bears the burden of "connecting the state law to the facts of this case to show, for example, that the exercise of plaintiff's claimed property rights would be a nuisance and that actions by the government of which plaintiff complains are actions that could be taken under [California] law to abate the nuisance." *Ibid.* So, under *John R.*, it has been and is the Government's burden to prove that plaintiffs' exercise of their recognized riparian rights constituted a nuisance under California law, and that California nuisance law would compel action (such as erection of a log boom) to prohibit the exercise of plaintiffs' riparian rights. Moreover, on summary judgment, it is the Government's burden to make this showing by way of *undisputed* material facts. *See, e.g., Meyers v. Asics Corp.*, 974 F.2nd 1304, 1307 (Fed. Cir. 1992).

**B. Discovery revealed no issue about the log boom or boat traffic.**

Thus, when plaintiffs made their initial disclosures in this case under Rule 26 on June 12, 2007, they did not envision a need to address the propriety of their activities within the OMS, their planned development and operation of a marina along its shoreline, or whether, by some stretch of the imagination, those actions might be deemed a "nuisance."[2] [Patton Declaration, ¶ 4.] These activities, which include the operation of small watercraft and navigable access for such watercraft,

---

[2] Plaintiffs prefaced their Rule 26 disclosure, with the following statement, identifying the persons presently known to them who were in possession of discoverable information that "plaintiffs may use to support their claim." Plaintiffs also believed that expert witnesses would be disclosed at a date "to-be-scheduled." Here is that preface:

"Subject to its right to amend and/or supplement this disclosure as additional information and evidence becomes known to or obtainable by it, and subject to all rights to designate expert witnesses in accordance with the to-be-scheduled disclosure date, plaintiff CRV is *presently* aware of the identities of the following individuals or entities who are likely in possession of discoverable information that plaintiffs may use to support their existing claims in this action, other than for impeachment:" [Ex. 1, Patton Declaration.]

are inherently lawful, and commonplace events in navigable waters and for riparian properties. They are no more a "nuisance" than driving a car on a street would be.

Consummating their disclosure, the parties exchanged documents and other written and printed information in discovery, and that exchange was extensive, as the Government states. When plaintiffs (through counsel) reviewed the Government's materials in that process, they found no documents or written evidence in the record that offered *proof* that the operation of small, shallow-draft watercraft within the OMS, and access for such craft to and from the shoreline of the Subject Property into navigable waters, would in any way constitute a public nuisance, or a threat or detriment to the environment.[3] Nothing in that record triggered any basis to identify or disclose any additional witnesses who might testify at trial as an expert on such a topic. [Patton Declaration, ¶ 5.]

To be sure, plaintiffs sought further discovery. They took the deposition of Marie Lacey, the EPA's Region IX Project Manager for the McCormick & Baxter ("M&B") Superfund Project, on October 23, 2007, in part to determine whether the EPA conducted studies to determine the potential impact of boat traffic, *if any*, on the sand cap in the OMS. Ms. Lacey's deposition testimony containing such testimony is part of Exhibit 1 attached to the Patton Declaration filed April 11, 2008 (see Pages 66-68, 108-109, 114-15), and the pertinent portion is cited below:

> Q. Were any studies done as to the potential impact of boat traffic on the cap?

---

[3] Some of the Government records assumed, speculated, or concluded that the log boom was necessary to protect the sand cap, but assumptions, speculations, and conclusions are not evidence. There were no studies, analysis, or factual histories suggesting, let alone proving, that the Government's sand cap would in any way be impacted by small boat traffic operating within the OMS. There is a complete absence of proof in the record to sustain such a contention. Plaintiffs did not anticipate a need to disprove a nullity.

A. There were no specific studies done that I'm aware of when the -- during the remedy selection process. When we were contacted by Dutra, we did consider I believe in the report that we prepared what impacts may occur from boat traffic.

Q. What kind of study was done in that regard?

A. It was an evaluation of dredging alternative that Dutra asked us to do.

Q. Was there any study, though, done as to the impact of boat traffic without dredging?

A. Not separate from that report that I'm aware of."

[67:15-68:2.][4]

Even after Ms. Lacey's deposition, plaintiffs attempted to ascertain whether any evidence existed to suggest that the log boom was necessary to preserve the sand cap or prevent the spread of contaminants. On December 21, 2007, they propounded a deposition notice pursuant to Rule 30(b)(6), requesting examination as to the following topic, among others (Patton Declaration, Exhibit 2):

> "20. Any assessment, testing, or effort conducted by the USEPA to determine the potential that marine vessels operating within the OMS would or might disturb the sand cap placed by the USEPA over the subsurface sediment within the OMS as part of the OMS Project."

This deposition notice (Ex. 2, Patton Declaration) further requested the Government to produce the following documents:

> "7. Documents evidencing any assessment, testing, or effort conducted by the USEPA to determine the potential that marine vessels operating within the OMS would or might disturb the sand cap placed by the USEPA over the subsurface sediment within the OMS as part of the OMS Project."

Counsel for the Government promptly contacted plaintiffs' counsel, seeking to narrow the scope of the examination to topics deemed relevant to the liability case. Repeatedly, the Government took the position that the effectiveness of its actions

---

[4] Plaintiffs were unable to find any documents in discovery furnished by the Government that address the potential impacts of boat traffic on the sand cap, including the "Dutra report" that Ms. Lacey speculated about.

within the OMS was irrelevant to the liability case. [Patton Declaration, ¶¶ 10-15.] Some of those discussions (in hindsight, appropriately) found their way into electronic correspondence between counsel. [Patton Declaration, Exhibits 3-5.] In particular, plaintiffs' counsel communicated the following to the Government's counsel regarding topic 20:

> "As to 20, you have essentially told me that whether or not the government had other remedies that were less draconian, or whether the remedy was necessary, is irrelevant to a takings claim. Without agreeing, what I am suggesting is that perhaps I would forgo inquiry on this issue if I get agreement from the government that it will not attempt to argue or prove that it chose the best remedy, or the remedy it chose was more consistent with what the community wanted, etc. *If the issue of the propriety or comparative good or effectiveness of the remedy is truly irrelevant to whether a compensable taking occurred, it should be irrelevat (sic) for both sides.*" [Ex. 3, Patton Declaration (emphasis added).]

As a result of these understandings, plaintiffs amended their 30(b)(6) notice on January 3, 2008, dropping many of the topics, but including the topics listed above to the extent the Government was going to raise an argument based upon the efficacy of its log boom. [Patton Declaration, ¶ 12, Ex. 4.] In further discussions that ensued on these remaining topics, the Government continued to assert that that the effectiveness of its actions within the OMS (including the sand cap and log boom) was irrelevant to the liability case. Equally important, *at no time during these communications did the Government hint, let alone disclose that it would be asserting, at summary judgment or in trial, that its log boom was effective to abate some nuisance.* [Patton Declaration, ¶ 13.] Plaintiffs' counsel ultimately accepted the Government's position, on January 9, 2008, stating "I am willing to accept your good faith and avoid unnecessary activity." [Patton Declaration, ¶ 14, Ex. 5.]

At the 30(b)(6) deposition on January 14, 2008, and relying on the Government's steadfast position that the efficacy of its actions within the OMS was

irrelevant, plaintiffs' counsel did not examine the Government's 30(b)(6) witness (again, Ms. Lacey) on the topic of the efficacy of the log boom. Nor did the Government produce any further documents on that topic in response to Request Category No. 1 in the amended deposition notice. [Patton Declaration, ¶¶ 15, 16.]

So there was and is no evidence that has been produced by the Government to support a defense that the erection of the log boom across the OMS was necessary to "abate a nuisance."[5] Further, it was clear that the Government took the position that the efficacy of the log boom as a remedial measure was irrelevant to the liability case. In short, there was nothing that triggered any expectation on plaintiffs' part that they would need to call any witness, expert or otherwise, to provide testimony at trial to meet evidence to support a defense that the Government's log boom is effective to abate some nuisance.[6] That is the main reason why plaintiffs never thought there was any need to supplement their initial disclosure in that regard. They did not have any inkling of a need, or even a possibility that they would need to call Mr. Benoit, as a witness at trial. Indeed, given that there is no evidence to support the abatement defense, there still should be no need to call Mr. Benoit to testify at trial.

### C. The summary judgment cross-motions.

Plaintiffs made their summary judgment motion on April 11, 2008, and did not assert that there is no "nuisance" abated by the log boom to support the motion.

---

[5] This is also made clear in plaintiffs' supplemental responses to Government interrogatories in this case concerning whether the Government's actions "abated" a nuisance. Plaintiffs' agreed that the actions *on the M&B Site itself,* helped prevent the spread of contamination. But they specifically noted that there is no evidence to suggest that the Government's actions *within the OMS* have abated any nuisance or prevented the spread of contaminants. *See* supplemental response to Interrogatory No. 17, attached as Exhibit 7 to Patton Opposition Declaration filed May 30, 2008.

[6] Again, this is not an element of plaintiffs' takings case.

[*See, e.g.*, plaintiffs' Proposed Findings of Uncontroverted Facts, which make no mention of that fact.] Defendant, however, filed its own summary judgment motion, asserting as its penultimate argument, that its log boom abates a nuisance. [*See* Defendant's Memorandum, filed April 15, 2008, at Section IIIE5, at pages 22-33.] In support of that argument, the Government has cited to various EPA records reciting (but not proving) that the log boom is necessary to protect its sand cap from boat traffic, and to prevent contaminants in the sediment beneath the sand cap from becoming "re-suspended" in the water and migrating to other portions of the OMS, or the Stockton Deep Water Channel. Of course, these are nothing more than unsupported and self-serving conclusions of unknown persons within the EPA, arrived at without the slightest analysis, or even a modicum of common sense.[7] But regardless, they must now be addressed on this motion for summary judgment. It was only then, with receipt of the Government's motion (April 15, 2008), and to absolutely ensure that these motions are dealt with *on the factual merits* and the record protected, that plaintiffs became aware of any need to consult with a professional engineer to refute the Government's specious argument.

So what is the evidence that the Government seeks to strike on this motion? In a nutshell, and although it took a few pages for Mr. Benoit to lay an appropriate foundation, it is little more than the common sense notion described above and in footnote 8 below -- that a 2-foot thick layer of sand beneath the enormous pressure

---

[7] One could just as easily conclude that boat traffic in the adjacent mouth of the OMS might disturb the sand cap, and thus the log boom should be placed across the Stockton Deep Water Channel -- such a conclusion has the same factual foundation (nothing). And while Mr. Benoit is certainly qualified as an expert, it does not take rocket science to know that a 2–foot thick layer of sand lying on the sediment beneath 12-14 feet of water exerts an enormous amount of pressure on the sediment below. And the 12-14 feet of water over the sand cap exerts an enormous amount of pressure on the cap. That is because liquids weigh a lot. In response to this obvious logic, what has the Government offered by way of *evidence* to prove that the cap would be threatened by small boat traffic -- nothing.

exerted by 12-14 feet of water is not going to be disturbed by the comings and goings of small boat traffic, with drafts of less than 4 feet, and Mr. Benoit's confirmation of the Government's own statements that the contaminants involved sink, rather than float, and thus do not migrate. These are basic propositions of the laws of physics, not complicated theories requiring extended study and analysis (the kinds of problems Mr. Benoit typically undertakes in his work).[8]

## III. LEGAL ARGUMENT

### A. Plaintiffs were not required to disclose Mr. Benoit as an expert or percipient witness for trial under RCFC Rule 26, nor did they conceal his identity from the defense.

Rule 26(a)(2)(A) of the Rules of this Court provides as follows:

> "(A) In addition to the disclosures required by paragraph (1), a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence."

Rule 26(a)(2)(C) states:

> "(C) These disclosures shall be made at the times and in the sequence directed by the court. In the absence of other directions from the court or stipulation by the parties, see Appendix A ¶¶ 5, 8, the disclosures shall be made at least 70 days before the scheduled close of discovery or, if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under paragraph (2)(B), within 30 days after the disclosure made by the other party. The parties shall supplement these disclosures when required under subdivision (e)(1)."

Plaintiffs had no obligation to disclose Mr. Benoit as a witness under Subpart (A)(1) unless and until they determined that he might be called as a witness *to testify*

8 As discussed in greater detail below, where is the prejudice to the Government? If it had deposed Mr. Benoit, would it have learned anything it shouldn't have already known – that its position is illogical and unfounded? And if it had evidence to refute the laws of physics, why didn't it provide such evidence in discovery and in support of its motion, rather than rely upon its own self-serving conclusions about the sand cap?

*at trial* in this case. As pointed out above, plaintiffs still have not made such a determination, as they believe there is a complete absence of proof to support the Government's contention that the log boom is necessary to "abate a nuisance," a contention for which the Government bears the burden of proof.[9] Unless such evidence surfaces (and plaintiffs believe that it cannot, because contrary to the laws of physics), it is most unlikely that Mr. Benoit will be called to testify at trial. It was only when the Government asserted that contention on this motion, and cited to its own assumptions and conclusions in that regard as "evidence," that plaintiffs realized that caution dictated that they affirmatively refute those conclusions on the summary judgment motion, with Mr. Benoit's Declaration.[10] But that doesn't mean that Mr. Benoit is likely to be called to testify as a witness at trial. [*See, e.g.,* Patton Declaration, ¶ 19.] Only if this Court were to determine that genuine issues of material fact exist as to whether the log boom abates a nuisance, would Mr. Benoit be called to testify as an expert at trial. In that event, he would promptly be disclosed and made available for deposition.

There is also the timing aspect of disclosure to consider. Subpart 2(C) of Rule 26 calls for disclosure "within 30 days after the disclosure made by the other party," where the evidence is intended to contradict or rebut evidence on the same topic offered by the other party. That is exactly what Mr. Benoit's Declaration does, it *contradicts* the Government's assumptions and speculation about the log boom.

---

[9] On a motion as important as this, plaintiffs cannot leave the matter to chance, and must refute the contention, even if they believe it unsupported. But they were not aware of such a need until they received the motion.

[10] Nothing in Rule 26 requires the disclosure of a witness who may submit a declaration in opposition to a motion for summary judgment. The purpose and intent of the rule is to identify witnesses *who may testify at trial.* Plaintiffs had no inkling that they might need Mr. Benoit for either purpose (summary judgment or trial) until the Government pushed its nuisance argument in this motion.

Since defendant bore the burden of proving the nuisance defense, plaintiffs had (and have) every right to expect that if the Government truly intended to present this defense, it would disclose an expert in an effort to prove that the log boom is vital to preventing the spread of contamination out of the OMS, and how so. Since there is a complete dearth of factual analysis on this point in the record, the only conceivable way of proving it would appear to be through such testimony. But defendant never made such a disclosure to trigger a counter-disclosure on the part of plaintiffs. They had the right to believe that expert testimony would not be necessary on this point at trial. It was and should be a non-issue.

And finally, Subpart (2)(C) says the disclosure is to be made "at least 70 days before the scheduled close of discovery." While this case has bifurcated discovery, with liability discovery preceding discovery on the amount of just compensation, there is no reason that expert witnesses *who are going to testify at trial* cannot be disclosed and deposed at least 70 days before the scheduled close of discovery in this case, which will not even occur until such a schedule is determined for the second phase. The parties did not stipulate that expert witness discovery had to be bifurcated into two phases, where trial was and is a long way off. Neither side has disclosed any expert. If the case is going to trial, plaintiffs anticipate that all experts (liability and compensation) will be disclosed and deposed as we approach the close of discovery and the trial date in the case as a whole, consistent with Subpart (2)(C).

**B. Defendant has not been prejudiced by the Benoit Declaration, or by any failure to disclose Mr. Benoit as a potential witness.**

Nor has the filing of the Benoit Declaration prejudiced the Government in any way, other than refuting an unsupported conclusion that it now advances as a means to avoid its duty to provide just compensation. First, even without the Benoit

Declaration, defendant has utterly failed to prove that the log boom is required and effective to abate some nuisance. Second, the Declaration is no more than the presentation (albeit persuasively and in context) of basic laws of physics – twelve feet of water exerts enormous hydrostatic pressure on the surface below, such that the hulls of smallcraft operating above cannot disturb the surface. The Court can take judicial notice of such basic scientific principles. *See, e.g., The Pantry, Inc. v. Stop-N-Go Foods, Inc.*, 777 F.Supp. 713, 733 (S.D. Ind. 1991) (judicial notice of scientific data establishing that benzene is a known human carcinogen). The Government can hardly claim surprise that the laws of physics prove that its log boom has no beneficial impact on the contamination levels within or without the OMS. That is especially the case where it didn't even consider those laws (or the consequences to adjoining owners) in forging ahead with its chosen course of action, terminating navigation in the slough.

Further, the Government has every opportunity to address Mr. Benoit's Declaration in its reply papers. Its problem is that it has no response to that Declaration, because it is the truth, and because the Government has never had any evidence to prove that the log boom abates any "nuisance." But that does not constitute prejudice. There is no basis to strike the Declaration. *See, e.g., Montefiore Medical Center v. American Protection Ins. Co.*, 226 F.Supp.2nd 470, 474-75 (S.D.N.Y. 2002). *Montefiore* holds as follows:

> "Precluding evidence "that was not disclosed in discovery is a drastic remedy and will apply only in situations where the failure to disclose represents a flagrant bad faith and callous disregard for the rules," *Johnson Electric North America, Inc. v. Mabuchi Motor America Corp.*, 77 F.Supp.2d. 446, 458 (S.D.N.Y.1999); *McNerney v. Archer Daniels Midland Co.*, 164 F.R.D. 584, 587 (W.D.N.Y.1995), and is a matter within the trial court's discretion, *Johnson Electric North America, Inc.*, 77 F.Supp.2d at 458; *Ventra v. United States*, 121 F.Supp.2d 326, 332 (S.D.N.Y.2000). There is no evidence of bad faith on Plaintiff's part . . ." [336 F.Supp.2nd 475.]

The same holds true in our case. There is no evidence of any gamesmanship or hiding the ball on plaintiffs' part with Mr. Benoit. There was and is no evidence which plaintiffs had to rebut that purported to show that the log boom prevents a nuisance from existing, that would have alerted plaintiffs to the need for witness (expert or otherwise) testimony on this topic. It was only when the Government chose to finesse that argument in its motion for summary judgment that plaintiffs were alerted to provide this rebuttal evidence. [Patton Declaration, ¶ 17.] If anyone has played games, it is the Government.

**C. Plaintiffs would be severely prejudiced if the Benoit Declaration is stricken, and in its absence the Court accepts that the Government has established that its log boom actually abates a nuisance.**

Contrasted with the Government, plaintiffs stand to lose much if the motion is granted, and the USEPA's bald conclusions about its log boom are accepted as unopposed. This case is all about plaintiffs' Constitutional right of just compensation for the taking of their property rights. The Government has moved for judgment that it does not have to provide such compensation, based on the contention (and nothing more) that its log boom terminated an existing nuisance. Regardless of the speciousness of that contention, plaintiffs are obliged to rebut it with the truth. If that truth is stricken, plaintiffs' Constitutional rights are obviously jeopardized.

As *Montefiore* and the cases cited therein hold, striking evidence is a drastic remedy that the Courts are loathe to grant. This case is not even close to the type where such relief would be appropriate.

**D. Far less drastic relief is available in any case.**

Plaintiffs do not believe that any relief is justified on the Government's motion, and that it should be denied outright. But if the Court is concerned that somehow

defendant would be put to unfair disadvantage by allowing the Declaration to remain as part of the record, as it should, there are far less prejudicial means to ensure that fairness is achieved, and the motions decided on the merits. For example:

1) The Government could be granted leave to respond to Mr. Benoit's Declaration in its reply papers by any appropriate witness, including witnesses not disclosed in its own Rule 26 disclosures. Of course, this would work a great advantage for the Government, which, if it was going to actually try to prove its "abatement of nuisance" defense, should at all times have known of the need for such a witness, yet never disclosed one (which, of course, would have triggered a counter-disclosure). Plaintiffs do not think such relief is fair or warranted, but it is, of course, preferable to striking the Benoit Declaration.

2) The Government could be granted leave to depose Mr. Benoit on his opinions before filing its reply, within a reasonable time limit. Again, one might ask what this would accomplish, since Mr. Benoit is not going to say anything different other than set forth in his Declaration. He is not about to tell this Court that water at depth does not exert significant hydrostatic pressure, or that the contaminants in issue are soluble or float. Again, plaintiffs do not think that such relief is merited, but to the extent there are concerns, it would place defendant in exactly the position it claims it would have occupied had Mr. Benoit been disclosed as a witness.

3) More appropriately, the Government can be granted additional time and space in its reply papers to fully muster up whatever arguments it can to refute the truths in the Benoit Declaration. Plaintiffs have no objection to providing the Government with an additional month of time, and 15 additional pages in its reply memorandum to accomplish this. The fact is, however, this will also be of little

realistic benefit, because the Government still cannot refute the laws of physics. But here, plaintiffs have no objection, especially if it will end the bickering.

4) Finally, if the Court recognizes the reality that the Government has not adduced a shred of evidence to meet its burden of proving the defense, the Declaration of Mr. Benoit largely becomes moot, since the Government's motion for summary judgment must be denied. Under such circumstances, there would likely not be prejudice to plaintiffs if the Declaration were ignored. However, because of the possibility of appeal and for purposes of protecting the record, plaintiffs can hardly recommend (and oppose) striking the brief, although it is firmly their position that the Government has adduced no admissible evidence to support its conclusory claim that the log boom abates a "nuisance."

E. **Good reasons justify the length of plaintiffs' opposition brief, and defendant's claim of prejudice can be met by providing additional time and pages. Striking plaintiffs' brief would deprive them of any opportunity to have this motion heard on the merits, and would be extremely prejudicial.**

And last, defendant is up in arms because plaintiffs filed a brief of almost 45 pages without obtaining leave of Court, something plaintiffs overlooked in their effort to meet the filing deadline and comprehensively address the numerous arguments raised in the Government's motion. Plaintiffs apologize for this failure; however, there are good reasons for the length of their brief, and no prejudice to defendant. Yet defendant insists that this Court forfeit plaintiff's right to be heard in opposition, because the brief exceeds the permitted length. *The last thing the Government wants is for this motion to be determined on the merits.* That is not justice, but rather a completely Draconian result. Rather, the brief should be considered on the merits, and defendant permitted additional considerations so that no advantage is gained.

First, plaintiffs did not and do not believe that the page limit is 30 pages for opposition briefs, as defendant maintains, citing Rule 5.3(b)(2), which applies to reply briefs. Plaintiffs believed and still believe that Rule 5(b)(1)'s limit of 40 pages applies to their opposition brief, which is *their initial brief* on the Government's motion. If the limit is 40 pages, then plaintiffs' brief if only 4½ pages overlong, and it is submitted that most of those 4½ pages are taken up by the exhibits that were incorporated directly into the brief, for the convenience of the Court and the Government (see pages 4, 5, 7, 8 and 13).

But regardless of the page length, plaintiffs request the Court's leave permitting their overlong brief. There are good reasons to grant that request and consider the entire brief. First, we are here dealing with *dispositive* cross-motions --- the issue of whether or not plaintiffs are entitled to just compensation for a taking under the Fifth Amendment. These cross-motions are not the ordinary garden variety motion seeking leave to amend a pleading, or to obtain discovery. Rather, they could decide the issue of liability (compensable taking) in our case, assuming the Court determines there are no genuinely disputed material facts. There is the very real possibility that the liability issue will be decided on these competing cross-motions without a trial. Such important determinations merit thorough and detailed briefing, so that all arguments are adequately discussed, and all admissible evidence considered. Plaintiffs believe that the Court deserves such discussion in making an informed decision, and the length of their Memorandum was appropriate to provide it.

Second, plaintiffs seek to work no prejudice or unfair advantage in filing an overlong brief. They have no objection to granting defendant an additional 15 pages in its reply brief to fully address all issues (plaintiffs will not need any additional

pages above the 20-page limit for replies). Similarly, they have no objection to a reasonable extended deadline for the filing of those replies (so long as the date is simultaneous for both sides), so the Government has adequate time to present its arguments. Defendant is not prejudiced.

## IV. CONCLUSION

Plaintiffs have operated in good faith, and their opposition to the Government's motion is in good faith. The Government now seeks to foist an unsupported conclusion (that its log boom abates a nuisance) on this Court and negate plaintiffs' right to just compensation. When it did so, plaintiffs rebutted that conclusion with irrefutable scientific evidence, grounded in basic physical principles. The Government cannot be allowed to deprive plaintiffs of the opportunity to present their case on the merits, and this motion should be denied.

Dated: June 23, 2008

Respectfully Submitted,

SHAPIRO BUCHMAN PROVINE & PATTON, LLP

By: ______________________________
John H. Patton
Attorneys for Plaintiffs CRV Enterprises, Inc.
and C. Ryan Voorhees

209749.1