John H. Patton, California SBN 069261
Matthew K. Wisinski, California SBN 195535
SHAPIRO BUCHMAN PROVINE & PATTON, LLP
1333 North California Boulevard, Suite 350
Walnut Creek, CA 94596
Telephone: (925) 944-9700
Facsimile: (925) 944-9701
E-mail: jpatton@sbllp.com

Attorneys for Plaintiffs CRV Enterprises, Inc.
and C. Ryan Voorhees

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **CRV ENTERPRISES, INC., a California corporation, C. Ryan Voorhees, an individual,**<br><br>Plaintiffs,<br><br>vs.<br><br>**THE UNITED STATES OF AMERICA,**<br><br>Defendant. | No. 06-660L<br><br>**DECLARATION OF JOHN H. PATTON IN SUPPORT OF PLAINTIFFS CRV ENTERPRISES, INC. AND C. RYAN VOORHEES' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE**<br><br>Judge: George W. Miller<br><br>Accompanying Papers: Memorandum of Points and Authorities |

**DECLARATION OF JOHN H. PATTON**

I, John H. Patton, state and declare as follows:

1. I am an attorney at law licensed to practice before the Court of Federal Claims, and a partner of Shapiro Buchman Provine & Patton, LLP, attorneys of record for plaintiffs CRV Enterprises, Inc. ("CRV") and C. Ryan Voorhees in the above-entitled action. I make this Declaration in support of plaintiffs' opposition to defendant United States of America's ("the Government") motion to strike the Declaration of Michel Benoit and Memorandum of Points and Authorities filed by

plaintiffs in opposition to the Government's motion for summary judgment. I have personal knowledge of the facts stated herein.

2. Until the Government filed its motion for summary judgment on April 15, 2008, I was unaware of any need or likelihood that plaintiffs might call or need to call Michel Benoit to testify as an expert witness at the trial of this case. I still do not believe that Mr. Benoit will need to be called as an expert witness at the trial of this case, because I do not believe there is any evidence in the record or developed in discovery to prove that the Government's log boom within the Old Mormon Slough ("OMS") is necessary or effective to abate any nuisance. However, because the Government has argued that position and cited to statements in documents as "evidence" for that position on its motion for summary judgment, prudence dictated that I obtain a competent Declaration to rebut that position in opposition to the Government's motion, and thus I sought Mr. Benoit's opinions for that purpose.

3. Plaintiffs made their initial disclosure in this case pursuant to Rule 26 of this Court on or about June of 2007. A true and correct of that disclosure is attached hereto, marked Exhibit 1, and incorporated herein by reference.

4. At the time that plaintiffs submitted their initial disclosure (Exhibit 1), and at all times up to my first reviewing the Government's motion for summary judgment (filed April 15, 2008), I did not believe there was any likelihood that I would call Michel Benoit, or any other expert witness, to testify at trial on the topic of whether the Government's log boom within the OMS is necessary or effective to abate any nuisance. That is for two reasons: First, I have never seen or heard of any affirmative evidence (documentary or otherwise) that would prove that the log boom is necessary or effective to abate any nuisance (I do not consider operation of small boats in navigable waters to be a nuisance), and I do not consider conclusions

to that effect to be evidence. Second, the Government has consistently taken the position in this litigation, in discovery and otherwise, that the efficacy of its remedial actions is irrelevant to the plaintiffs' takings claim.

5. During the course of discovery in this case, I endeavored to determine whether the Government had any evidence that its log boom was necessary of effective to abate any nuisance. First, I reviewed the many documents produced by the Government concerning its McCormick & Baxter ("M&B") Superfund Project, including those documents that discussed the Government's chosen remedies, and the reasons underlying the selection. My review of those documents revealed no facts, analysis, studies, or other evidence (as I understand the term evidence) to prove that installation and maintenance of a log boom across the OMS was necessary or effective to abate any nuisance, to protect the sand cap 12-14 feet below the surface, to prevent the spread or migration of contaminants, or to otherwise do anything to protect the environment or human health. I do not consider conclusions to that effect to be evidence, absent appropriate foundational facts, of which I found none.

6. On October 23, 2007, I conducted the deposition of Marie Lacey, the Region IX Project Manager for the U.S. Environmental Protection Agency ("USEPA") who headed the M&B Superfund Project that is in issue in this case. During the deposition, I specifically asked Ms. Lacey whether the USEPA had conducted any studies or analysis to determine the potential impact of boat traffic on the sand cap. The following is the testimony that Ms. Lacey gave in that regard:

> Q. Were any studies done as to the potential impact of boat traffic on the cap?
>
> A. There were no specific studies done that I'm aware of when the -- during the remedy selection process. When we were contacted by

Dutra, we did consider I believe in the report that we prepared what impacts may occur from boat traffic.

Q. What kind of study was done in that regard?

A. It was an evaluation of dredging alternative that Dutra asked us to do.

Q. Was there any study, though, done as to the impact of boat traffic without dredging?

A. Not separate from that report that I'm aware of."

[Lacey Deposition, 67:15-68:2.]

7. During my review of the record in this case, including the documents produced by the Government, I have been unable to find any Dutra report or other document analyzing the potential impacts of boat traffic on the bottom or the OMS or any sand cap on the bottom. Nevertheless, I continued in my efforts to ascertain whether there was any evidence to support a contention that the log boom was necessary or effective to abate any nuisance. I did not find any.

8. On December 21, 2007, I propounded a deposition notice to the USEPA pursuant to Rule 30(b)(6) of the Rules of this Court. A true and correct copy of that deposition notice is attached hereto, marked Exhibit 2, and incorporated herein by reference. Included in this deposition notice was the following topic:

"20. Any assessment, testing, or effort conducted by the USEPA to determine the potential that marine vessels operating within the OMS would or might disturb the sand cap placed by the USEPA over the subsurface sediment within the OMS as part of the OMS Project."

9. The December 21, 2007 deposition notice (Exhibit 2) also included a request that the USEPA produce the following documents:

"7. Documents evidencing any assessment, testing, or effort conducted by the USEPA to determine the potential that marine vessels operating within the OMS would or might disturb the sand cap placed by the USEPA over the subsurface sediment within the OMS as part of the OMS Project."

10. Within days of propounding this deposition notice (Exhibit 2), counsel for the Government, William J. Shapiro, contacted me to discuss narrowing the scope of examination for this deposition, and we had numerous and detailed discussions, as well as e-mail exchanges, on this topic over the next few weeks. During those communications, the Government consistently took the position that the effectiveness of its remedial actions was irrelevant to the takings case, and that this Court has no jurisdiction to review the propriety or efficacy of those actions. At no time did Mr. Shapiro or any other person representing the Government, tell me that they intended to assert that the log boom was necessary or effective to abate some nuisance, and Mr. Shapiro repeatedly told me that the Government was going to rely on the record itself to support its anticipated motion for summary judgment. Based upon our communications, I saw no need to designate or call an expert or percipient witness to rebut any contention that the log boom was necessary or effective to abate a nuisance, because there was no evidence known to me to support such a contention, and because I believed that the effectiveness of the log boom was irrelevant to the takings case.

11. Attached hereto, marked Exhibit 3, and incorporated herein by reference, is a true and correct copy of an exchange of e-mails that Mr. Shapiro and I had on this topic on December 28, 2007. In that exchange, I documented the following position with regard to Topic 20 in the 30(b)(6) deposition notice:

> "As to 20, you have essentially told me that whether or not the government had other remedies that were less draconian, or whether the remedy was necessary, is irrelevant to a takings claim. Without agreeing, what I am suggesting is that perhaps I would forgo inquiry on this issue if I get agreement from the government that it will not attempt to argue or prove that it chose the best remedy, or the remedy it chose was more consistent with what the community wanted, etc. *If the issue of the propriety or comparative good or effectiveness of the remedy is truly irrelevant to whether a*

*compensable taking occurred, it should be irrelevat (sic) for both sides.*" [Emphasis added.]"

12. Following the above e-mail exchange, plaintiffs amended their 30(b)(6) deposition notice to drop many of the topics, but including Topic 20 (renumbered to Topic 1), to ensure discovery of any facts supportive of any contention based upon the effectiveness of the log boom. Attached hereto, marked Exhibit 4, and incorporated herein by reference is a true and correct copy of my January 3, 2008 e-mail to Mr. Shapiro in that regard, along with the attached revised 30(b)(6) deposition notice. This revised notice (Exhibit 4) also retained the request for production of any documents on the topic of the potential impact of vessels on the sand cap. (Request Category No. 1).

13. Shortly after I sent the January 3 e-mail and revised deposition notice (Exhibit 4) Mr. Shapiro resumed contact with me in further efforts to narrow the scope of the deposition to relevant topics. During those communications, the Government again took the position that the effectiveness of its remedial actions was irrelevant to the takings case, and this time it was in the context of Topic 20 (now renumbered 1 in the revised deposition notice). At no time in these discussions (or ever) did Mr. Shapiro tell me that the Government intended to assert that the log boom was necessary or effective to abate some nuisance, and Mr. Shapiro again told me that the Government was going to rely only on the record itself to support its anticipated motion for summary judgment. Since the record contained no evidence of any assessment, testing, or effort conducted by the USEPA to determine the potential that marine vessels operating within the OMS would or might disturb the sand cap, I believed that there was no issue in this regard, because there was no evidence to prove that the log boom is effective or necessary to abate any nuisance, and the burden of proof for such issue would be

on the defense. Based on these discussions, I was led to believe that there was no relevant reason to pursue inquiry on revised Topic 1, concerning the efficacy of the log boom. Of course, this is also consistent with my belief that no expert testimony was required on the topic.

14. My further communications with Mr. Shapiro on this topic are partially memorialized in two e-mails that were exchanged on January 9, 2008, a true and correct copy of which is attached hereto, marked Exhibit 5, and incorporated herein by reference.

15. I conducted the 30(b)(6) deposition of the USEPA on or about January 14, 2008. Based on my understandings of the Government's position from my communications with Mr. Shapiro, I only examined the 30(b)(6) witness (again, Ms. Lacey) on Topics 2 and 3, which concerned the Government's notification to plaintiffs of its intent to erect the log boom. I specifically did not inquire as to the necessity or efficacy of the log boom to protect the sand cap, because I felt assured that it was not an issue in the case, and I was also unaware of any evidence, in the record or otherwise, to prove that the log boom was necessary or effective to protect the sand cap. Similarly, I saw no need to identify or disclose any witnesses, including Mr. Benoit, on what I believed to be a non-issue, particularly where the Government would bear the burden of proof if it had chosen to make this an issue.

16. The Government produced additional documents at the 30(b)(6) deposition, but produced no additional documents concerning the necessity or efficacy of the log boom to protect the sand cap, or the potential impact of boat traffic on the sand cap.

17. The Government filed its motion for summary judgment on April 15, 2008. Some time thereafter, I reviewed the motion, and was surprised to learn that

the Government was asserting as a principal ground of that motion that it had proven that its log boom abates a nuisance, based upon certain documents authored by unknown USEPA personnel, concluding and assuming that the log boom is necessary or effective to protect the sand cap that the USEPA placed over the sediment bottom in the OMS. When I reviewed these arguments, I determined that the appropriate course in response was to affirmatively disprove these conclusions, and only at that time did I first contact and consult with Michel Benoit about providing rebuttal opinion testimony in this case, to disprove these conclusions in opposition to the motion.

18. At no time have plaintiffs ever knowingly concealed or tried to conceal Michel Benoit's identity as a potential expert witness in this case. As noted above, until I reviewed defendants' summary judgment motion this April, I had not even considered attempting to introduce opinion evidence from Mr. Benoit in this case.

19. I have still not determined that Mr. Benoit is likely to or may be called as an expert witness at the trial of this case, and will not make such a determination unless additional developments in the case call for it, such as a determination by the Court that triable issues of fact exist as to whether or not the log boom actually abates a potential nuisance. In the event that occurs, I will timely disclose Mr. Benoit as an expert, and he will be made available to the Government for deposition.

20. I contemplate that the experts in this case will all be disclosed and deposed (liability or compensation) during the second phase of the case, and closer to and prior to trial, and am and always have been agreeable to such a procedure. It was not and is not plaintiffs' position that the liability experts must be disclosed and deposed during the liability phase of discovery in this case, simply because other

(percipient witness) discovery has. Neither side has disclosed any expert witness as yet.

21. I apologize to the Court for exceeding the page limit for memoranda in plaintiffs' opposition to the Government's summary judgment motion, and request the Court's leave for plaintiffs' memorandum filed May 30, 2008, to be allowed and considered in opposition to that motion. There was absolutely no intention on my part to obtain an unfair advantage over the defense by exceeding the page limit, and plaintiffs have no objection to a reasonable expansion of the page limit for defendant's reply brief to address the opposition, or a reasonable expansion of the time to file reply briefs. There also certainly was no intention to inconvenience or overburden the Court in that regard.

22. The only reasons plaintiffs' opposition memorandum was so lengthy were the number of issues raised by the Government on its motion for summary judgment, because the extensive factual history that is background to the dispute needed to be recited, because the motion is so important to plaintiffs' rights, and because I wanted to fairly and comprehensively cover all of the arguments and evidence that need to be considered in determining the motion, which I have a duty to fulfill.

23. If the Court were to strike either the Benoit Declaration or plaintiffs' opposition memorandum, plaintiffs would be severely prejudiced in the determination of this motion and plaintiffs' cross-motion, in that such motions would not be determined on their full merits. For those reasons, plaintiffs respectfully request that the Government's motion be denied.

24. The Government has cited in its papers to the Court's previous Order in the Spring of 2007 compelling interrogatory responses from plaintiffs. That has

nothing to do with the issues presently before this Court on this motion to strike. However, since the Government has chosen to bring it up, the Court should be aware that the prior delay in responding to these interrogatories in Spring 2007 was due to the fact that I was personally behind, and catching up on numerous pressing matters that had not been addressed, due to my absence from my offices due to a lengthy trial, and an ensuing family vacation. Plaintiffs should not be penalized for that lapse, which has nothing to do with the instant motion.

25. I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct and of my own personal knowledge, except as to those matters stated on information and belief, and as to those matters I believe them to be true and correct.

Executed this 20th day of June, at Walnut Creek, California.

John H. Patton

209773.1