**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CRV ENTERPRISES, INC. and<br>C. RYAN VOORHEES, | ) | |
| Plaintiffs, | ) | Case No. 06-660L |
| v. | ) | |
| | ) | Judge George W. Miller |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**UNITED STATES' REPLY IN SUPPORT OF MOTION TO STRIKE**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** . . . . . . . . . . iii

**EXHIBIT LIST** . . . . . . . . . . iv

**REPLY MEMORANDUM** . . . . . . . . . . 1

**I. Plaintiffs' Untimely Disclosure of Expert Evidence Violates RCFC 26 and the Court Should Strike the Untimely Disclosure Pursuant to RCFC 37** . . . . . . 2

**A. Plaintiffs' Argument Misapprehends RCFCs 26 and 37** . . . . . . . . . . 2

**B. Plaintiffs Cannot Justify their Untimely Disclosure Based on Surprise** . . . . . 4

**1. Plaintiffs Have Been on Notice of the United States' Nuisance-based Arguments Since at Least 2003, When the United States First Briefed Those Arguments** . . . . . . . . . . 4

**2. Plaintiffs' Argument Misapprehends Discussion Between Counsel Concerning Plaintiffs' Notice of Deposition** . . . . . . . . . . 6

**C. Plaintiffs Admit that the Challenged Expert Evidence is Not Necessary to Address the United States' Motion** . . . . . . . . . . 8

**II. Plaintiffs' Response Violates RCFC 5.3 and the Court Should Strike the Document** . . . . . . . . . . 9

**III. The United States Opposes Plaintiffs' Proposed Suggestions for "Less Drastic Relief"** . . . . . . . . . . 10

**IV. Conclusion** . . . . . . . . . . 11

# TABLE OF AUTHORITIES

## FEDERAL CASES

Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.,
340 F.3d 1298 (Fed. Cir. 2003) . . . . . 5

Centex Corp. v. United States,
71 Fed. Cl. 40 (2006) . . . . . 5

Lencco Racing Co., Inc. v. Jolliffe,
215 F.3d 1341 (Fed. Cir. 1999) (Table) . . . . . 5, 7-9

Lingle v. Chevron U.S.A., Inc.,
544 U.S. 528 (2005) . . . . . 9

Lohnes v. Level 3 Commc'ns, Inc.,
272 F.3d 49 (1st Cir. 2001) . . . . . 5

O2 Micro Intern. Ltd. v. Monolithic Power Sys., Inc.,
467 F.3d 1355 (Fed. Cir. 2006) . . . . . 5

Trost v. Trek Bicycle Corp.,
162 F.3d 1004 (8th Cir. 1998) . . . . . 5

## FEDERAL STATUTES

42 U.S.C. § 9613(h) . . . . . 9

## FEDERAL RULES

RCFC 26 . . . . . 1, 4-6, 13

RCFC 26(a) . . . . . 5

RCFC 26(a)(2) . . . . . 4-6

RCFC 30(b)(6) . . . . . 9, 10

RCFC 37 . . . . . 1, 4-6

RCFC 5.3(b)(2) . . . . . 4, 11-13

**EXHIBITS**

| **Exhibit Number** | **Description** |
|---|---|
| 5 | Answer in CRV I, dated June 30, 2003 (relevant portion only) |
| 6 | Defendant's Motion for Judgment on the Pleadings and Memorandum in Support Thereof in CRV I, dated Feb. 24, 2004 (relevant portion only) |

**REPLY MEMORANDUM**

Defendant, the United States of America, respectfully submits this Reply to Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion to Strike (Doc. No. 50) ("Plaintiffs' Opposition to Strike"). The United States' Motion to Strike and Motion to Stay Briefing Schedule (Doc. No. 47) ("Defendant's Motion to Strike"), requests that the Court strike the declaration of Michel Benoit, Ph.D. ("Benoit Declaration"), attached to Plaintiffs' Response to the United States' Motion for Summary Judgment (Doc. No. 44) ("Plaintiffs' Response"). Plaintiffs' Response relies heavily on the Benoit Declaration to inject expert opinions on a variety of subjects, primarily related to the question of whether the Environmental Protection Agency's ("EPA's") actions were intended to abate a nuisance. See Def.'s Mot. to Strike at 5-6. Plaintiffs' disclosure of the Benoit Declaration five months after the close of discovery violates the disclosure requirements set forth in RCFC 26, and the Court should strike the declaration pursuant to RCFC 37.

As discussed below, Plaintiffs' Opposition to Strike misapprehends the relevant law, which plainly required Plaintiffs to disclose the identity of their proffered expert before the end of discovery. Plaintiffs have been aware of the United States' intention to raise a nuisance defense since at least 2003, and, therefore, have no reasonable excuse for their late disclosure of the Benoit Declaration. Plaintiffs' Opposition to Strike discusses several emails between counsel regarding certain deposition testimony, apparently to suggest that the undersigned counsel tricked Plaintiffs' counsel into believing that the United States might not raise a nuisance defense. Plaintiffs mischaracterize these communications, which do not support Plaintiffs' allegations or justify Plaintiffs' untimely disclosure. Finally, Plaintiffs admit that the

Benoit Declaration is not necessary to respond to Defendant's Motion for Summary Judgment. Accordingly, the Court should strike the declaration.

The United States also moved to strike Plaintiffs' Response because Plaintiffs violated the page limitation established under RCFC 5.3(b)(2). Plaintiffs' Opposition to Strike misapprehends the relevant rule regarding page limitations, and fails to justify Plaintiffs' need for additional pages. Accordingly, the Court should strike Plaintiffs' overly-long Response.

**I. Plaintiffs' Untimely Disclosure of Expert Evidence Violates RCFC 26 and the Court Should Strike the Untimely Disclosure Pursuant to RCFC 37**

**A. Plaintiffs' Argument Misapprehends RCFCs 26 and 37**

As discussed in Defendant's Motion to Strike, the Court should strike the Benoit Declaration pursuant to RCFC 37 because Plaintiffs' untimely disclosure violates RCFC 26(a)(2). See Def.'s Mot. to Strike at 5-7. RCFC 26(a)(2) requires a party to disclose "the identity of any person who may be used at trial to present evidence . . . at least 70 days before the scheduled close of discovery." Liability related discovery in the current case closed on January 18, 2008, and Plaintiffs did not disclose the identity of Dr. Benoit until May 30, 2008, approximately five months after discovery closed. Plaintiffs' untimely disclosure violates RCFC 26(a)(2).

Plaintiffs first respond that the disclosure requirements are irrelevant because Plaintiffs have not yet decided whether to call Dr. Benoit as a witness at trial. See Pls.' Opp'n to Strike at 9-10. However, the RCFC 26 disclosure requirements apply to witnesses who "may be used at trial" to present expert testimony, not to witnesses "whom counsel has definitively decided will be used at trial," as Plaintiffs appear to believe. The rule is intended to encourage early and full disclosure of expert witnesses to avoid surprise after discovery has closed. See Centex Corp. v.

United States, 71 Fed. Cl. 40, 54 (2006) (purpose of Rule 26(a)(2) is to "encourage the timely exchange of expert information"). For this reason, RCFC 37(c)(1) specifically states that a party, who "without substantial justification," fails to comply with RCFC 26(a) "is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." RCFC 37(c)(1) (emphasis added). The inclusion of the "on a motion" language in Rule 37(c)(1) emphasizes that Rule 26(a) applies in the context of summary judgment, a fact that courts have often recognized. See, e.g., O2 Micro Intern. Ltd. v. Monolithic Power Sys., Inc., 467 F.3d 1355, 1368-69 (Fed. Cir. 2006) (affirming exclusion of untimely expert evidence in summary judgment briefing); Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc., 340 F.3d 1298, 1313-14 (Fed. Cir. 2003) (same); Lencco Racing Co., Inc. v. Jolliffe, 215 F.3d 1341, *2 (Fed. Cir. 1999) (Table) (same); Lohnes v. Level 3 Commc'ns, Inc., 272 F.3d 49, 60 (1st Cir. 2001) (same); Trost v. Trek Bicycle Corp., 162 F.3d 1004, 1007-09 (8th Cir. 1998) (same); Wright & Miller, 8A Fed. Practice & Procedure Civil 2d, § 2289.1 (Rule 37(c) "applies not only at trial, but also with respect to any motion, such as a motion for summary judgment").

Plaintiffs next argue that their disclosure is timely because it was made "within 30 days after the disclosure made by the other party," consistent with RCFC 26(a)(2)(C). Pls.' Opp'n to Strike at 10-11. The Court should reject Plaintiffs' argument. RCFC 26(a)(2)(C) permits a party to introduce, within 30 days of the other party's expert disclosure, expert testimony "intended solely to contradict or rebut evidence on the same subject matter identified by another party under paragraph (2)(B). . . ." RCFC 26(a)(2)(C) (emphasis added). In the instant case, the United States did not submit any expert testimony "under paragraph (2)(B)" in conjunction with

its Motion for Summary Judgment. Accordingly, there was no new expert testimony for Plaintiffs to rebut, and RCFC 26(a)(2)(C) is irrelevant.

Last, Plaintiffs argue that even if 26(a)(2)(C) applies, their disclosure was timely because discovery has not yet closed. See Pls.' Opp'n to Strike at 11. The Court should reject this argument as well. The parties agreed to bifurcate this matter into liability and valuation phases. See Joint Preliminary Status Report at 1 (Doc. No. 9-1). The Court established a liability-related discovery schedule, and that period closed (after several extensions) on January 18, 2008 (Doc. No. 20). The parties agreed to proceed with dispositive motions based on the liability-related discovery conducted by that date. The Benoit Declaration clearly relates to liability issues, not valuation issues. Plaintiffs cannot justify their untimely disclosure based on the fact that the parties agreed to bifurcate this case into liability and valuation phases.

In summary, the Benoit Declaration, submitted more than five months after the close of discovery, is untimely under RCFC 26. The Court should, therefore, strike the Benoit Declaration pursuant to RCFC 37.

### B. Plaintiffs Cannot Justify their Untimely Disclosure Based on Surprise

#### 1. Plaintiffs Have Been on Notice of the United States' Nuisance-based Arguments Since at Least 2003, When the United States First Briefed Those Arguments

In April 2003, Plaintiff CRV filed an earlier lawsuit ("CRV I"), alleging the same cause of action. The United States' Answer, dated June 20, 2003, alleged that the "actions of the United States were taken to abate a nuisance." Answer in CRV I (attached as Def.'s Ex. 5). The United States' Motion for Judgment on the Pleadings in that case, filed more than four years ago, explicitly raised, and discussed, the nuisance defense:

> CRV has no property interest in activities that would result in a condition of nuisance. Specifically, CRV is subject to pre-existing limitations on its alleged property rights that prohibit CRV from undertaking activities that would spread contamination from the polluted portion of the Old Mormon Slough that has been designated part of [the] McCormick & Baxter Superfund Site.

Def.'s Mot. for J. on the Pleadings in CRV I, dated Mar. 3, 2004, at 34 (attached as Def.'s Ex. 6). In the instant case, the United States raised the same affirmative defense in its December 20, 2006 Answer (Doc. No. 8), and made the same nuisance-based argument in its Motion for Summary Judgment: "It is well-settled that landowners have no right to engage in an action that would constitute a public nuisance, and the government's limitations of such actions cannot result in a taking." Def.'s Mot. for Summ. J. at 22 (Doc. No. 36). In short, the United States first informed Plaintiffs that it intended to raise a nuisance defense in 2003, and the United States has repeatedly and consistently articulated that defense since that time. Plaintiffs cannot reasonably claim to have been surprised by the content of the United States' Motion for Summary Judgment.

Plaintiffs raise essentially the same argument raised by plaintiffs in Lencco Racing Co., who argued that they did not realize they needed an expert until they read the defendant's motion for summary judgment. 215 F.3d at *2. The Federal Circuit responded that

> the filing of a summary judgment motion cannot be characterized as a surprise justifying an untimely production of evidence when the defense upon which summary judgment is sought was pleaded in the answer. [The plaintiff] was on notice from the outset of the litigation that the validity of the patent claims would be a central issue in the case, and [the plaintiff's] failure to identify [an expert] within the period set by the district court for identifying expert witnesses was therefore not substantially justified.

Id. In the instant case, Plaintiffs were also on notice from the outset of litigation that the United States intended to raise a nuisance defense. Therefore, Plaintiffs' disclosure of Dr. Benoit is untimely, and the Court should strike the declaration.

**2. Plaintiffs' Argument Misapprehends Discussion Between Counsel Concerning Plaintiffs' Notice of Deposition**

Beginning at page five of Plaintiffs' Opposition to Strike, Plaintiffs relate a correspondence between counsel concerning a deposition notice (the "Notice"), which Plaintiffs propounded to the United States on December 21, 2007. See Pls.' Opp'n to Strike at 5-7. According to Plaintiffs, this correspondence somehow misled Plaintiffs' counsel into believing that they would not need to "call any witness, expert or otherwise, to provide testimony at trial to meet evidence to support a defense that the Government's log boom is effective to abate some nuisance," id. at 7, and therefore justifies Plaintiffs' late disclosure of the Benoit Declaration. The correspondence does not support Plaintiffs' position.

As shown in Plaintiffs' Exhibit 2, the Notice requested the United States to designate a government employee to testify about a variety of issues, including any "assessment, testing, or effort conducted by the USEPA to determine the potential that marine vessels operating within the [Old Mormon Slough] would or might disturb the sand cap. . . ." Id. at Ex. 2 at 5. Clearly, the Notice was intended to ensure that Plaintiffs had all the relevant information that the United States intended to rely upon, so that Plaintiffs' counsel would not be caught unaware in the middle of summary judgment by an unexpected affidavit from a government employee or new expert witness.[1/]

---

[1/] Ironically, Plaintiffs' untimely disclosure of the Benoit Declaration puts the United States in exactly the situation Plaintiffs sought to avoid for themselves.

Because the entire record supported the United States' position, the United States had no cause to hire an outside expert to conduct additional studies, or ask a government employee to prepare a new report. Therefore, on January 9, 2008, the undersigned counsel informed Plaintiffs' counsel that the United States intended to rely on the existing record (which Plaintiffs have had access to for several years), and that the United States did not intend to attach any new declarations or expert reports to its Motion for Summary Judgment: "As we discussed, it may be necessary to submit a declaration (or declarations) to explain certain documents or the like. However, we do not, at this point, intend to offer any new studies or data beyond those of which you are already aware." Id. at Ex. 5.

The undersigned counsel also informed Plaintiffs' counsel that, to the extent Plaintiffs intended to "challenge the propriety of a government action," such a challenge would be improper. Id. at Ex. 3. The United States' arguments that a takings claimant cannot collaterally challenge a Record of Decision, or base a takings claim on some sort of proportionality test, are accurate. See Def.'s Mot. for Summ. J. at 15 (citing 42 U.S.C. § 9613(h), which withdrew federal jurisdiction to hear challenges to EPA's remedial decisions); id. (citing Lingle v. Chevron U.S.A., Inc., 544 U.S. 528 (2005), which held that the "substantially advances" formula is not a valid takings test). Plaintiffs were apparently content with the United States' response, and withdrew the topic from the RCFC 30(b)(6) deposition.

Consistent with its discussions with Plaintiffs' counsel (both verbal and written), the United States then filed its Motion, relying on the relevant case law and the existing record to support its defenses; the United States did not submit any new "studies or data," expert reports, or declarations. In short, the undersigned counsel did exactly what he told Plaintiffs' counsel he

would do in January 2008. The undersigned counsel never told Plaintiffs' counsel that the United States was withdrawing its nuisance defense, never suggested that Plaintiffs should not hire an expert witness, and cannot be held responsible for Plaintiffs' counsel's preparation of Plaintiffs' case. Therefore, Plaintiffs cannot justify their untimely disclosure of expert testimony, post-hoc, on the grounds presented in Plaintiffs' Opposition to Strike.

### C. Plaintiffs Admit that the Challenged Expert Evidence is Not Necessary to Address the United States' Motion

Plaintiffs' Opposition to Strike contends that the United States "utterly failed to prove that the log boom is required." Pls.' Opp'n to Strike at 12**.** According to Plaintiffs, "even without the Benoit Declaration, [the] defendant has utterly failed to prove that the log boom is required and effective to abate some nuisance." Id. at 11-12. Assuming, *arguendo*, Plaintiffs are correct, the Benoit Declaration is unnecessary, and the Court should strike the document.

Although Plaintiffs' argument suggests the Benoit Declaration is unnecessary in order to respond to the United States' Motion for Summary Judgment, Plaintiffs also contend that they would be "severely prejudiced if the Benoit Declaration is stricken." Id. at 13. Plaintiffs' contradictory argument is illogical: if Plaintiffs can adequately respond to the Defendant's Motion for Summary Judgment without the Benoit Declaration, Plaintiffs would suffer no prejudice from a decision striking the declaration.

On the other hand, allowing Plaintiffs to submit untimely expert testimony in the middle of dispositive briefing would prejudice the United States and hinder the efficient administration of this case. The United States relied on Plaintiffs' non-disclosure in defending this lawsuit, and reasonably assumed Plaintiffs would abide by the Court's rules. See Def.'s Mot. to Strike at 7. The United States had no reason to retain or identify any experts to address the issues presented

in the parties' cross motions for summary judgment, and the United States had no opportunity to depose Dr. Benoit or retain a rebuttal expert.

**II. Plaintiffs' Response Violates RCFC 5.3 and the Court Should Strike the Document**

The United States also moved to strike Plaintiffs' Response because it exceeded, by 15 pages, the total number of pages allowed under RCFC 5.3(b)(2). Plaintiffs first respond that Plaintiffs' Response is only five pages too long since their Response was "*their initial brief* on the Government's motion." Pls.' Opp'n to Strike at 16 (emphasis in original) (relying on RCFC 5.3(b)(1)). Plaintiffs' argument misapprehends the applicable rule. RCFC 5.3(b)(2) states that "reply briefs or memoranda shall not exceed 20 pages . . . or 30 pages where a response to a motion is included." RCFC 5.3(b)(2). Plaintiffs' Response is a response to the United States' Motion for Summary Judgment, not an "initial brief," as Plaintiffs contend. Accordingly, the rules allow only 30 pages. Plaintiffs' characterization of their response brief as an "initial brief" is inconsistent with the Court's rules.

Plaintiffs next state that they "overlooked" the page limitation "in their effort to meet the filing deadline," and that the Court should permit them to file their overlong brief. Pls.' Opp'n to Strike at 15-16. The United States opposes this late request. The main reason Plaintiffs' Response exceeds the page limit is due to Plaintiffs' lengthy discussion of the Benoit Declaration, which, as discussed above, Plaintiffs failed to disclose in accordance with this Court's rules.

## III. The United States Opposes Plaintiffs' Proposed Suggestions for "Less Drastic Relief"

Beginning at page 13 of Plaintiffs' Opposition to Strike, Plaintiffs suggest four alternative remedies that Plaintiffs believe would be "far less prejudicial means to ensure that fairness is achieved. . . ." Id. at 14. Plaintiffs suggest, for example, that the Court allow the United States to hire its own expert, depose Dr. Benoit, or add additional pages in a reply brief. Each of these proposed alternatives would seriously undermine the efficient future proceedings in this case. The parties participated in lengthy discovery in this case – from March 2007, when the United States transmitted its Initial Disclosures, to January 2008, when liability-related discovery ended. This discovery, of course, was preceded by the parties' September 2003 exchange of Initial Disclosures in CRV I (where the parties exchanged essentially the same documents as they exchanged in the instant case). Moreover, the United States raised several other defenses to Plaintiffs' claims, which do not depend on a finding of nuisance. Given this lengthy discovery period and the United States' other legitimate defenses, the prospect of hiring a new expert witness at this late date to address the issues raised in the Benoit Declaration is unappealing.

Consequently, if the Court declines to strike the Benoit Declaration, the United States requests that the Court reserve judgment on the United States' nuisance defense, and resolve the other issues raised in the parties' cross-motions now. If some issues remain after the Court resolves these other issues, the United States respectfully requests the right to retain an expert or experts at a later date, and conduct any additional necessary discovery, to fully address the issues raised in the Benoit Declaration and the nuisance defense.

In making this statement, the United States does not concede that the Benoit Declaration creates a triable issue of fact. Dr. Benoit apparently only considered the possible impacts of the sand cap caused by small boat traffic, not barge traffic. See Benoit Decl. at 10 (hypothetical "marina use depicted in the development plan (Exhibit 2) would of necessity be small craft, and would have minimal drafts, in most cases 2 feet or less (perhaps 3 feet for larger sailboats)."). The opinion ignores the fact that Plaintiffs (and the former owners of the Subject Property) used the slough for barge traffic, not small boat traffic. Indeed, Plaintiff Voorhees testified that their takings claim was premised, in part, on a restriction of an alleged right to "bring empty barges . . . down the [entire length of] the [Slough]." Def.'s Ex. 30 at 192:1 to 193:10.[2] Despite this fundamental flaw with Dr. Benoit's assumption, the United States believes the most efficient approach is to consider the other defenses raised in the United States' Motion for Summary Judgment first, as we believe those issues are dispositive of Plaintiffs' claims.

**IV. Conclusion**

For the reasons discussed above, Plaintiffs' untimely disclosure of the Benoit Declaration violates RCFC 26. In addition, Plaintiffs violated RCFC 5.3 by submitting an overly-long memorandum. The Court should, therefore, strike the Benoit Declaration and Plaintiffs' Response.

---

[2] In addition, it appears that Dr. Benoit merely read some of the record (not all), and has never even seen the Subject Property. E.g., Benoit Declaration at 4 ¶ 6 (stating that Dr. Benoit review a January 1999 report, "the Government's papers on this motion, and other Government publications and site photographs provided to me," and "determined that the [Subject Property] is located adjacent to and north of the [Slough]").

Respectfully submitted this 7th day of July, 2008.

RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division

__s/ William J. Shapiro________
WILLIAM J. SHAPIRO
Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
U.S. Department of Justice
501 I Street
Suite 9-700
Sacramento, CA 95814
916-930-2207 (phone)
916-930-2210 (fax)

Attorney for Defendant

Of Counsel:

Laurie Williams
Assistant Regional Counsel
U.S. EPA Region 9
75 Hawthorne Street
San Francisco, CA 94105