IN THE UNITED STATES COURT OF FEDERAL CLAIMS

RECEIVED
JUN 30 2003
OFFICE OF THE CLERK
U.S. COURT OF FEDERAL CLAIMS

CRV ENTERPRISES, INC., a California Corporation,

Plaintiff,

v.

The United States,

Defendant.

Case No. 03-867L
Judge. Nancy B. Firestone

03 JUL -9 AM 9:38

ANSWER TO COMPLAINT

The Defendant United States, by and through undersigned counsel, in answer to Plaintiff's Complaint, hereby admits, denies, and avers as follows:

FIRST DEFENSE

Defendant responds to the numbered paragraphs of Plaintiff's Complaint as follows:

1. This paragraph constitutes Plaintiff's characterization of its action and thus requires no response. Defendant denies that there has been a compensable taking by the United States of Plaintiff's property interests.

2. Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this paragraph.

3. Defendant admits the allegations in this paragraph.

4. Defendant admits the allegations in this paragraph.

5. The allegations of this paragraph are conclusions of law to which no response is

Exhibit 5 to
United States' Motion to Strike

90-1-23-10940

impacts on Dutra's business interests in the Maritime Center property. EPA also met with Plaintiff's representatives in January 2003 in order to determine, *inter alia*, whether, consistent with activities necessary to address the threat from the M&B property, EPA could in any way mitigate any alleged impacts on Plaintiff's business interests in the Maritime Center property.

All of the allegations of the Complaint that have not been specifically admitted or otherwise answered are hereby denied.

SECOND DEFENSE

The complaint fails to state a claim upon which relief can be granted.

THIRD DEFENSE

Plaintiff's claim is barred by the Anti-Assignment Act, 31 U.S.C. § 3727 (2002).

FOURTH DEFENSE

Plaintiff does not own the property rights which it alleges have been taken.

FIFTH DEFENSE

The actions of the United States were taken to abate a nuisance.

SIXTH DEFENSE

The actions taken by the United States were within the scope of its navigational servitude.

THEREFORE, the United States denies that Plaintiff is entitled to the relief prayed for, or any relief whatsoever, and requests that this action be dismissed with prejudice, that judgment be entered for Defendant, and that Defendant be allowed its costs and such other and further relief as the Court may allow.



Exhibit 5 to
United States' Motion to Strike

DATED: June 30, 2003

Respectfully submitted,

DOROTHY R. BURAKREIS
General Litigation Section
Environment and Natural
Resources Division
U.S. Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
(202) 305-0465
FAX (202) 305-0506
dorothy.burakreis@usdoj.gov

Attorney for Defendant

Of Counsel:

Laurie Williams
Assistant Regional Counsel
U.S. EPA Region 9
75 Hawthorne Street
San Francisco, CA 94105

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CRV ENTERPRISES, INC., Plaintiff, | ) | Case No. 03-867L |
| v. | ) | Hon. George W. Miller |
| UNITED STATES OF AMERICA, Defendant. | ) | |

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND MEMORANDUM IN SUPORT THEREOF**

Pursuant to RCFC 12(c), and incorporating the standard of review for RCFC 12(b)(1) and, alternatively, 12(b)(6), Defendant, UNITED STATES OF AMERICA, hereby moves for an order dismissing Plaintiff CRV Enterprises, Inc.'s complaint. The United States requests that the Court dismiss the complaint under RCFC 12(b)(1) because Plaintiff lacks standing to sue, its takings claim is not ripe for review and the Court lacks jurisdiction to adjudicate its claim that the U.S. Environmental Protection Agency could have chosen a different environmental remedy. Alternatively, even assuming the Court has jurisdiction over Plaintiff's claim, the United States requests that the Court dismiss CRV's complaint under Rule 12(b)(6) because CRV has no compensable property interest.

**MEMORANDUM**

**STATEMENT OF THE CASE**

Plaintiff CRV Enterprises, Inc.'s ("CRV") is the current owner of a parcel of land located in Stockton, California adjacent to a U.S. Environmental Protection Agency ("EPA") Superfund site known as the McCormick & Baxter Superfund Site. Cplt. ¶¶ 4, 6, 11, & Ex. B. CRV

the purpose of addressing environmental contamination contained in the sediments of the Old Mormon Slough and capping afterwards does serve a purpose related to navigation. Accord Allen Gun Club, supra, 180 Ct. Cl. 423, 1967 WL 8872 (noting that dredging does serve a purpose related to navigation) (citing Tempel v. United States, 248 U.S. at 129). Nonetheless, CRV argues that the announced capping and placement of a log boom (to address environmental contaminants in navigable waters) serve no purpose related to navigation. The logic flaw is that CRV cannot dispute that the capping and log boom, once installed, will protect water quality, and protecting water quality has been found to be a purpose related to navigation. See Good, 39 Fed. Cl. at 96 (citing Ashland Oil & Transp. Co., 504 F.2d at 1326).[11] Notably, waters protected will be CRV's bulkhead west of the notch area, and the remainder of the Old Mormon Slough on into the Stockton Channel. Because the United States' clean up efforts serve the purpose of navigation, its invocation of the navigational servitude defense is proper. Consequently, CRV has no compensable property interest.

**2. CRV Has No Property Right in the Creation of a Nuisance.**

CRV's claims are without foundation because, even if contrary to the facts and law presented above that the restrictions placed on Plaintiff's navigational access are not within the

---

11/ Beyond the navigational servitude exception, background principles of California law should be considered as part of the equation. For example, the California Public Trust Doctrine serves as a pre-existing limitation on CRV's property interest and bars recovery for a denial of access because "[t]he State . . . holds all of its navigable waterways and the lands lying beneath them 'as trustee of a public trust for the benefit of the people.'" Colberg, Inc. v. California, 67 Cal. 2d 408, 416 (1967) (quoting People v. Gold Run Ditch & Mine Co., 66 Cal. 138, 151 (1884)). As under federal case law, in California, when the State does not physically encroach upon private property, its mere denial of a right to access navigable waters does not amount to a taking. Id. at 425-26.

United States' navigational servitude, CRV has no property interest in activities that would result in a condition of nuisance. Specifically, CRV is subject to pre-existing limitations on its alleged property rights that prohibit CRV from undertaking activities that would spread contamination from the polluted portion of the Old Mormon Slough that has been designated part of McCormick & Baxter Superfund Site.

Legitimate government efforts to protect public health and safety do not result in a taking. Pennsylvania Coal Co. v. Mahon, 260 U.S. 395, 415 (1922). "[A]ll property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community . . . . Courts have consistently held that a State need not provide compensation when it diminishes or destroys the value of property by stopping illegal activity or abating a public nuisance." Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 492 (1987) (citations omitted).

In Lucas v. South Carolina Coastal Council, supra, 505 U.S. at 1028-29, the Supreme Court addressed the pre-existing limitation that owners have on their property rights:

> Where "permanent physical occupation" of land is concerned, we have refused to allow the government to decree it anew (without compensation), no matter how weighty the asserted "public interests" involved . . . though we assuredly *would* permit the government to assert a permanent easement that was a preexisting limitation upon the landowner's title . . . . We believe that similar treatment must be accorded to confiscatory regulations, i.e. regulations that prohibit all economically beneficial use of land: Any limitations so severe cannot be newly legislated or decreed (without compensation), but must inhere in the title itself, in the restrictions that background principles of the State's law of property and nuisance already place upon land ownership. A law or decree with such an effect must, in other words, do no more than duplicate the result that could have been achieved in the courts . . . by the State under its . . . power to abate nuisances that affect the public generally, or otherwise.



Exhibit 6 to
United States' Motion to Strike

(Citations omitted). Therefore, "[i]f [an] imposed restraint would have been justified under the state's traditional nuisance law, then the property owner's bundle of rights did not include the right claimed, and no taking could occur." Loveladies Harbor, Inc. v. United States, 28 F.3d 1171, 1179 (Fed. Cir. 1994).

In sum, where private property harbors a nuisance, the property owner has no compensable expectancy in a use which maintains a nuisance. M & J Coal Co. v. United States, 30 Fed. Cl. 360, 367 (1994) aff'd, 47 F.3d 1148 (Fed Cir. 1995). Landowners simply have no compensable interest in the use of their land if that use threatens the public health and safety. M&J Coal, supra, 47 F.3d at 1154 ("'since no individual has a right to use his property so as to create a nuisance or otherwise harm others, the [government] has not 'taken' anything when it asserts its power to enjoin the nuisance-like activity.'") (quoting Keystone Bituminous Coal Ass'n, 480 U.S. at 491 n.20); Hendler v. United States, 36 Fed. Cl. 574, 585 (1996) ("Because a property owner does not have a right to use his property in a manner harmful to public health or safety, the government's exercise of its powers to protect public health or safety does not constitute a compensable taking of any of the owner's property rights.") (citations omitted).

California law has long informed property owners their title does not include the right to create or maintain a public nuisance through their use of their property. The applicable portions of the California Civil Code that define and govern nuisances were first enacted in 1872 and are enforceable to this day. See Cal. Civ. Code §§ 3479-80, 3594. "Nuisance" is defined as "anything injurious to health." Id. at § 3479. "A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." Id. at § 3480.



Exhibit 6 to
United States' Motion to Strike

California also codified a provision that creates legal liability for the failure to abate a continuing nuisance. Id. at § 3483. Moreover, under the code enacted in 1872, any public body or officer authorized by law (e.g., California Environmental Protection Agency, California Regional Water Quality Control Board, California Department of Health Services, California Department of Toxic Substances Control, EPA) may abate a public nuisance. Id. at § 3594.

California law does not allow a landowner to maintain a nuisance on private property, even if the landowner had no role in, or duty to prevent, the creation of the nuisance on that property. See Leslie Salt Co. v. San Francisco Bay Conserv., 153 Cal. App. 3d 605, 620-22, 200 Cal. Rptr. 575, 584-86 (1984); People v. Southern Pac. Co., 150 Cal. App. 2d Supp. 831, 833-34, 311 P.2d 200, 201-02 (1st Dist. 1957). The spreading of contamination from the McCormick & Baxter Superfund Site after the EPA's cleanup remedy is installed would constitute a nuisance under state law. Cf. KFC Western, Inc. v. Meghrig, 28 Cal. Rep. 2d 676, 683 (2d Dist. 1994) ("a landowner may state a cause of action for a private continuing nuisance against a previous owner whose activity contaminated the property.") (citing Newhall Land & Farming Co. v. Superior Court, 23 Cal. Rptr. 2d 377, 382 (5th Dist. 1993)); Hendler, 36 Fed. Cl. at 586 ("the installation of the wells on plaintiffs' property was necessary in order to abate the nuisance posed by [a contamination plume from the] Stringfellow [Acid Pits]."). EPA's regulatory decision and actions, to address the threat to public health and welfare posed by contamination and prevent the spread of contamination by restricting navigation in the Old Mormon Slough, is consistent with pre-existing limitations that prohibit uses that create a nuisance.[12] The planned restriction on

---

12/ Indeed, Plaintiff has acknowledged that EPA's actions where "duly authorized and conducted" pursuant to the authority granted in CERCLA, under which EPA addresses imminent and substantial endangerments to public health and the environment. Cplt. ¶ 4; see, supra, footnote 1 (citing applicable CERCLA provisions).



Exhibit 6 to
United States' Motion to Strike

navigational access to the southern side of the Maritime Facility (east of CRV's notch area) protects the community by preventing the spread of contamination into other navigable waters. In addition, controlling these hazardous contaminants prevents consumption of toxins by fish, and the resulting harm to people when these fish are consumed. Keeping the contamination in place will prevent degradation of other navigable waters, halt the spread of contaminants into other environments, and thus eliminate the need to restrict navigation to CRV's bulkhead west of the notch area, other parts of the Old Mormon Slough and the Stockton Channel.

Allowing CRV access to the Slough east of the notch area once the EPA's remedy is installed would (1) disturb the cap and underlying contaminated sediment, (2) result in the disturbance and spread of contaminants into other navigable waters, and (3) constitute a nuisance under California law. CRV, under California nuisance law dating back to the nineteenth century, does not have a right to create a nuisance and particularly in waters controlled by California for the public interest. See Selma Pressure Treating Co. v. Osmose Wood Preserving Co., 221 Cal. App. 3d 1601, 1616-19, 271 Cal. Rptr. 596, 605-06 (5th Dist. 1990) ("Pollution of the ground and rivers waters is damage to public property, as well as a direct injury to public welfare.") (citations omitted) (noting California's right to obtain compensation for clean up of hazardous waste in waters of the state under codified nuisance provisions). Consequently, EPA's actions to date have not and will not "take" from CRV any right recognized as property under California law, and thus cannot constitute a compensable taking.

CRV's complaint of a taking should be dismissed not only because its alleged partial denial of access is subservient to federal and state interests and not compensable, but also because it does not have a standing nor a ripe claim. It is also inapt for CRV to attack the EPA's



Exhibit 6 to
United States' Motion to Strike

selected and published remedy for the McCormick & Baxter Superfund Site that includes contaminated navigable waters. CRV's claim of a taking by the United States is not viable.

## CONCLUSION

The United States respectfully requests, for the above stated reasons, that this Court dismiss CRV's complaint.

Dated: February 24, 2004

Respectfully submitted,

ANDREW M. GOLDFRANK
Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Land Acquisition Section
P.O. Box 561
Washington, D.C. 20044-0561
(202) 305-0288 (telephone)
(202) 514-8865 (facsimile)
andrew.goldfrank@usdoj.gov

Attorney for Defendant

Of Counsel:

MATTHEW S. CLIFFORD
Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Land Acquisition Section
P.O. Box 561
Washington, D.C. 20044-0561
(202) 305-0358 (telephone)
(202) 305-0398 (facsimile)
matthew.clifford@usdoj.gov

LAURIE WILLIAMS (ORC-3)
Office of Regional Counsel
U.S. Environmental Protection Agency
Region IX